WILLIAM W. APPLETON et al., as Trustees under the Will of JAMES E. COOLEY, Deceased, Respondents, v. MAX MARX, Appellant.

1. LANDLORD AND TENANT — TENANT'S COVENANT TO MAKE REPAIRS — MEASURE OF DAMAGES IN ACTION FOR TENANT'S BREACH OF COVENANT. Where an action, brought by a landlord for the breach of a lessee's covenant to keep the premises in repair, is commenced before the expiration of the term, the measure of damages is the injury done to the reversion: while, if the action is brought after the expiration of the term, the measure of damages is the cost of putting the premises into repair.

2. SAME — LANDLORD'S RIGHT TO RECOVER COST OF PUTTING BUILDING INTO STATE OF REPAIR, CONTEMPLATED BY THE COVENANT, NOT AFFECTED BY FACT THAT SUBSEQUENT TENANT MADE REPAIRS TO BUILDING AT HIS OWN EXPENSE. Where it appears in an action for the breach of a lessee's covenant to keep the premises in repair, which was not brought until after the expiration of the defendant's term under the lease, that prior to such expiration the demised premises had been let to another tenant, a corporation, which, subsequently and after the defendant's term had expired, made at its own expense certain repairs upon the building which were sufficient to put it into good condition, the measure of damages is the cost of putting the demised premises into the state of repair contemplated by the broken covenant, and the landlord's right to recover this amount is not affected by the subsequent act of the new tenant in repairing the building.

*Appleton* v. *Marx*, 117 App. Div. 206. affirmed.

(Argued January 8, 1908; decided January 28, 1908)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 17, 1907, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Strauss* and *Eugene D. Boyer* for appellant.

*J. Hampden Dougherty* for respondents. The plaintiff's right of action for damages for breach of the covenant to repair having vested irrespective of the lease to the Waterman Company, it was immaterial whether plaintiffs or their new tenants paid for the repairs. The new lease was *res inter alios acta.* (*Joyner* v. *Weeks*, L. R. [2 Q. B. 1891] 31; 2 Wood on Landl. & Ten. [2d ed.] 891; *Wetham* v. *Kershaw*, L. R. [16 Q. B. Div.] 613; *Morgan* v. *Hardy*, L. R. [17 Q. B. Div.] 770; *Rawlings* v. *Morgan*, 18 C. B. [N. S.] 776; *Scott* v. *H., C. & B. Co.*, 135 N. Y. 141.)

WILLARD BARTLETT, J. This action was brought by the plaintiffs as landlords against the defendant as tenant to recover a balance of rent claimed to be due under the lease and damages for an alleged breach of a covenant to keep the demised premises in repair. The claim for rent was practically undisputed; and the principal matters litigated upon the trial before the referee were (1) the claim for damages arising out of the alleged breach of the covenant to repair, and (2) the defendant's counterclaim to the effect that he was induced to enter into the lease by means of false and fraudulent representations. The referee dismissed the counterclaim and directed judgment in favor of the plaintiffs for $1,000 rent and for $4,180.78 damages.

The action was not brought until after the expiration of the defendant's term under the lease. It appeared, however, that prior to such expiration the demised premises had been let to another tenant — a corporation known as the L. E. Waterman Company — which subsequently, and after the defendant's term had expired, made at its own expense cer-

tain repairs upon the building which were sufficient to put it into good condition. The referee held that the plaintiffs' measure of damages was the cost of putting the demised premises into the state of repair contemplated by the broken covenant, and that the right to recover this amount was not affected by the subsequent act of the new tenant in repairing the building. We think that the counterclaim was properly dismissed, and that there was sufficient competent evidence to sustain the finding of the referee as to the cost of the necessary repairs. The only questions which we deem it necessary to discuss relate to the proper measure of damages in such a case and the effect which should be given to the fact that the premises were put into repair by the new tenant.

As to the first question, the rule laid down by the leading text writers is that where the action for the breach of a lessee's covenant to keep in repair is brought before the expiration of the term the measure of damages is the injury done to the reversion; while if the action is brought after the expiration of the term the measure of the damages is the cost of putting the premises into repair. Thus, Mr. Mayne, an author whose work has frequently been referred to with approval in the English courts, says: " Where the action is brought upon the covenant to repair at the end of the term, the damages are such a sum as will put the premises into the state of repair in which the tenant was bound to leave them." (Mayne on Damages [6th ed.], 278.) According to Sedgwick, " where the tenant at the end of the term leaves the premises out of repair the measure of damages is the cost of putting them into repair and not the depreciation in value of the property." (3 Sedgwick on Damages [8th ed.], § 990.) This appears to have been the approved rule in England for many years. Thus, Baron PARKE in *Penley* v. *Watts* (7 Meeson & Welsby, 601), speaking of the breach of such a covenant, said : " The only true measure of damage here is what it would have cost the defendants to put the premises in repair." In *Davies* v. *Underwood* (2 Hurlstone & Norman, 570) Baron WATSON said that the damages recovered on the breach of a

covenant of this sort were usually such as would be sufficient to put the premises into repair, and that as matter of fact it was never proved to what extent the reversion was damaged.

The same doctrine is asserted in many subsequent English cases which also involved the second question which arises for consideration here, that is to say, the effect of the acts of third parties relied upon as restricting the amount of the landlord's right of recovery to nominal damages only. I will refer to some of these decisions. In *Rawlings* v. *Morgan* (18 Common Bench, 776; 114 Eng. Com. Law, 776) the lease contained a covenant on the part of the lessee to keep and yield up the premises in repair. When the lease expired the premises were in a dilapidated condition, and it was held that the landlord was entitled to recover the sum requisite to put them in repair in conformity with the covenant. Before the expiration of the lease the plaintiff, who was one of the reversioners, had made an agreement with a third person to grant him a lease for a long term; and soon after the lease expired the new lessees proceeded to pull down and demolish the old premises. Notwithstanding this fact it was held by the Court of Common Pleas that the landlord was not limited to a nominal recovery but was entitled to substantial damages. "It is true," said Mr. Justice BYLES, "the plaintiff has since parted with the reversion; but he still may have sustained damage from the non-repair of the premises. It may be that they sold for a less sum in consequence of their dilapidated condition, or the plaintiff had a narrower market. If the plaintiff once had a vested right to recover substantial damages, I do not see how we can deprive him of that right." This decision was followed at *nisi prius* by Mr. Justice LOPES in *Inderwick* v. *Leech* (1 Cababe & Ellis, 412) where the premises at the end of the tenancy were out of repair. The landlord on retaking possession made structural alterations therein. The learned judge declared that the premises being out of repair at the end of the term the plaintiff then had a vested right of action for compensation; and that nothing that had since occurred could make any differ-

ence in that right or affect it.   He, therefore, directed judg-
ment for the plaintiff in an amount to be ascertained by a
surveyor.   In *Morgan* v. *Hardy* (L. R. [17 Q. B. D.] 770)
the assignees of a lease were sued for a breach of a covenant
to leave the premises in repair at the end of the term, and it
was contended in their behalf that in consequences of changes
in the surrounding property the house had altered in value to
such an extent that it would be worth just as much for letting
purposes if some of the repairs which the lessee had cove-
nanted to make were either wholly omitted or made more
cheaply than was originally contemplated under the covenant.
The court, however, refused to recognize this as a valid excuse
for the non-performance of a covenant or a limitation of the
liability of the defendants thereunder, and held that the meas-
ure of damages for the breach was the amount required to put
the premises fully into repair.   "I do not think," said DEN-
MAN, J., "that it is competent to the defendants so to alter
the character of the covenant by which they are bound as
to limit their liability in the way suggested."   We now
come in order of time to the case of *Joyner* v. *Weeks*
(L. R. [2 Q. B. D. 1891] 31), decided in 1891 by LORD
ESHER and Lord Justice FRY in the Court of Appeal.
The opinions in this case contain the fullest and most
satisfactory discussion to be found in the books relative
to the questions now under consideration.   That was an
action to recover damages for breach of covenant by a
lessee of a house to keep it in repair and deliver it up in
repair.   The facts were very similar to those in the case at
bar.   The cost of making good the dilapidations existing at
the expiration of the lease was proved to amount to seventy
pounds.   It appeared, however, that the plaintiff with others
interested in the reversion executed a lease to a third party
to commence when the defendant's lease would expire wherein
the new tenant covenanted to lay out a specified sum in
making the alterations to the premises and also covenanted to
keep them in repair.   These alterations were made imme-
diately after the expiration of the defendant's lease and the

official referee held that inasmuch as the plaintiff had not suffered any loss he was entitled to recover only one farthing damages. In the divisional court (WILLS and WRIGHT, JJ.) it was held that the finding of the official referee that the plaintiff had sustained no loss was based upon an erroneous view of the law. " The person whose breach of contract has caused damage," said WRIGHT, J., " is not the less liable because the damage has been made good, or its effect compensated by an extraneous event of such a kind that if it had operated the other way it would not have increased his legal liability." The divisional court nevertheless refused to order judgment for the amount found by the official referee to be the cost of making the repairs contemplated by the covenant, deeming the better rule as to the measure of damages to be the diminution of the value of the lessor's estate by reason of the non-repair. There were cross-appeals and in the Court of Appeal the cost of repair was declared to be the correct rule by which to estimate the lessor's damages. " A series of dicta of learned judges have been referred to," said Lord ESHER, " which seem to me to show that for a very long time there has been a constant practice as to the measure of damages in such cases. Such an inveterate practice amounts, in my opinion, to a rule of law. That rule is that, when there is a lease with a covenant to leave the premises in repair at the end of the term, and such covenant is broken, the lessee must pay what the lessor proves to be a reasonable and proper amount for putting the premises into the state of repair in which they ought to have been left." This was declared to be, at all events, the ordinary rule which must apply in the absence of something affecting the condition of the property in such a manner as to affect the relation between the lessor and the lessee in respect to it ; and the master of the rolls was unable to find any such circumstances in the fact that the new lessee had subsequently repaired the premises. Lord Justice FRY was of the same opinion, pointing out that the lessor's right of action for damages consequent upon the breach of covenant vested in

him before any estate vested in the grantee of the subsequent lease; and that the subsequent performance by the second lessee of his own covenants could not abridge or take away the cause of action that vested in the lessor before the consequent lease took effect.

Counsel have not called our attention to any American case bearing directly upon the questions presented here. In *Watriss* v. *Cambridge National Bank* (130 Mass. 343), however, we find that the cost of repair is approved as the proper measure of damages for the breach of a lessee's covenant to keep in repair and to surrender the demised premises at the end of the term in as good order and condition as they are in at the beginning of it. In that case the covenant was to set up the demised premises in as good a condition as they were in at the inception of the lease. While neither of the questions which we have discussed appear hitherto to have been decided in this court, the view that the lessee's liability in his covenant is not decreased by the fact that a subsequent lessee has repaired the premises finds support in the opinion of O'BRIEN, J., in *Scott* v. *Haverstraw Clay & Brick Co.* (135 N. Y. 141). There the covenant which was broken bound the defendant to leave the surface of a brick yard in a smooth condition, which condition was necessary in order to manufacture brick successfully in the manner in general use when the lease was made; and it was held that neither the construction to be put upon the covenant nor the defendant's liability under it was changed by the fact that since the making of the lease other methods for manufacturing brick had been devised which rendered smoothness of the surface unnecessary.

We conclude that the referee was right in the measure of damages which he adopted and in holding that the plaintiff was entitled to a substantial recovery thereunder. The judgment should, therefore, be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.