Jasen, J.
Involved in this landlord-tenant dispute are issues arising from the lessee’s covenants to keep the demised premises in good and sufficient repair, and to surrender the demised premises in good order and condition.
Farrell Lines, Inc. (Farrell), as lessee of the 35th Street pier in Brooklyn, brought an action for a declaratory judgment asking for a declaration that it was not obligated upon its covenant to repair and surrender in good order until its lessor, the City *80 of New York (City), had first put the pier in the condition called for by the lease. This action was consolidated with one instituted by the City, as lessor of the 35th and 33rd Street piers, for damages arising from the lessee Farrell’s breach of its covenants to repair and surrender the demised premises in good order in both its leases for the 35th and 33rd Street piers. After a trial, the court concluded that the City had failed to perform its covenants to restore, and Farrell was, therefore, not bound under its obligation to repair. The court also granted Farrell’s prayer for declaratory relief and dismissed the City’s claim with respect to the 35th Street pier. Farrell, however, was held liable for damages ($222,349) for breach of its covenant to repair contained in the 33rd Street pier lease. (63 Misc 2d 542.) The Appellate Division affirmed on the opinion of the trial court.
35th street pier
In 1956, the 35th Street pier was badly damaged by an explosion and fire, which destroyed almost all of the shed and substantial parts of the concrete deck, supporting timbers and substructure. The fire and explosion, having rendered the pier unusable as a shipping terminal, Luckenbach S. S. Co., the lessee at that time, exercised its option to terminate the lease. The City, thereupon, undertook to repair and rehabilitate the damaged pier facilities in order to relet them to shipping companies. Between January, 1958, and January, 1960, certain repairs to, and rehabilitation of the facility were made.[1]
The City, in 1958, entered into separate arrangements for the successive leasing of this pier to Northeast Marine Terminal Company, Inc. (Northeast) and Farrell. Inasmuch as a new shipping terminal between 36th and 39th Streets was simultaneously being erected for long-term lease to Northeast, it was proposed by the City that Northeast should be first permitted to occupy the rebuilt 35th Street pier until its larger terminal was ready for occupancy, and thereafter Farrell would occupy it. Accordingly, two leases for the 35th Street pier were executed. The first, with Northeast, executed on January 7, 1958, *81 was to run from the time that the 35th Street pier was rebuilt until Northeast’s terminal was completed. The second lease, with Farrell, executed on March 4,1958, was to commence within 30 days of Northeast’s departure and to terminate on January 31,1968.
Pursuant to the terms of the lease between the City and Farrell, which were substantially identical to those in the lease between the City and Northeast, the City covenanted to (1) repair, rehabilitate and restore the substructure of the pier and construct a new concrete deck; (2) to repair, rehabilitate and restore the portion of the shed not affected by the fire, and (3) to construct a new one-story shed on the pier. All of this work was to be performed “ in a good and workmanlike manner ” in accordance with “ sound engineering practice ” and “ with the final plans and specifications to be approved by the Chief Engineer of the Department of Marine and Aviation.” In addition, it was mutually agreed that “ [i]t is the intent of this lease, that Lessor shall perform all of the work set forth above, prior to the commencement date of this lease, and in point of time, in accordance with the terms of another lease between The City of New York and Northeast Marine Terminal Company, Inc., covering the demised premises. ’ ’ Farrell for its part covenanted to keep the premises in good and sufficient repair during its term and to surrender the premises at the expiration of the term “ well and sufficiently repaired, painted and in good order and condition.”
The pier was initially occupied by Northeast on January 4, 1960. Upon completion of its new shipping terminal, Northeast vacated the pier on June 16,1962, and Farrell commenced occupancy two days later. A joint outgoing survey of the condition of the pier, made by the City and Northeast, was commenced immediately, and was completed on October 15, 1962.[2] From the time of the completion of the survey up to May, 1965, several discussions were held between the City and Farrell as to what work should be done on the pier by the City in order to complete its lease obligations. These discussions were terminated, how *82 ever, when they were unable to reach a final agreement. At that time Farrell commenced its declaratory judgment action.
We are in accord with the courts below that Farrell is not liable for breach of its covenants to keep, maintain and to surrender the 35th Street pier in good repair. Contrary to the City’s assertion, the record amply supports the conclusion that certain work, which cannot arguably be claimed to be without the lease obligation, was never performed by it. Since this appeal is here on affirmed findings of fact, and there Was ample evidence presented at the trial upon which the court could find that certain work was never performed, the City is foreclosed from arguing that it had completely rebuilt the pier. (Levine v. Shell Oil Co., 28 N Y 2d 205, 209.) Accordingly, because these defects preclude the City from alleging full performance upon its covenant, admittedly a condition precedent to Farrell’s obligation under its covenant to repair, Farrell’s obligation never came into being. (Isbrandtsen Co. v. City of New York, 33 AD 2d 1018.)
Moreover, the failure of the City to remedy the subsequent disrepairs caused by Northeast likewise prevents the City from recovering damages for Farrell’s breach of its covenants. The City’s contention that it was not required to do so by the terms of the lease because Farrell was bound to accept the pier in the condition which existed on January 4, 1960, the date Northeast commenced occupancy, and, thus, took subject to all damages resulting from or attributable to Northeast’s occupancy, is untenable.
A lease, like any other contract, is to be interpreted in light of the purposes sought to be attained by the parties. (Cohen v. Bass, Inc., 246 N. Y. 270; Matter of Loew’s Buffalo Theatres, 233 N. Y. 495; Buchanan v. Whitman, 151 N. Y. 253; 4 Williston, Contracts [3d ed.], § 619, pp. 730-733; 51C C. J. S., Landlord and Tenant, § 232, subd. [1].) “ An agreement of lease possesses no peculiar sanctity requiring the application of rules of construction different from those applicable to an ordinary contract.” (A. Z. A. Realty Corp. v. Harrigan’s Cafe, 113 Misc. 141, 147.)
Under the City’s interpretation of the lease, the benefit which Farrell sought to obtain from the City’s covenant of repair and *83 rehabilitation could be vitiated by a careless and negligent intermediate tenant. Furthermore, if the City could have satisfied its obligation to Farrell in 1960, then Farrell, under its covenant to repair, would be responsible to remedy all the disrepair attributable to Northeast if such were required to put the pier in good order, since the duty to repair and keep in good order also encompasses the duty to put in good order. (Tinsley v. Smith, 115 App. Div. 708, 712, affd. 194 N. Y. 581; Lehmaier v. Jones, 100 App. Div. 495, 498; 2 Rasch, New York Landlord and Tenant [2d ed.], § 625.) Since rules of construction of contracts require, whenever possible, that an agreement should be given a “fair and reasonable interpretation” (Aron v. Gillman, 309 N. Y. 157,163; see, also, Rentways, Inc. v. O’Neill Milk & Cream Co., 308 N. Y. 342; Wendel Foundation v. Moredall Realty Corp., 282 N. Y. 239; Columbus Spa v. Star Co., 216 App. Div. 218; Restatement, Contracts, § 236; Restatement 2d, Contracts [Tent. Draft No. 5, March 31, 1970], § 229), the City’s interpretation is clearly erroneous for the reason that under such interpretation, Farrell would not only be burdened with an unexpected liability, but also the benefit sought to be derived by Farrell from the City’s covenant would be rendered nugatory.
In our view, the trial court’s interpretation — that each of the covenants became “ effective [on the date set for the commencement of Farrell’s term], including the City’s unequivocal undertaking to build and restore * * *” — is both reasonable and in conformity with the intention of the parties. Thus, the date of Farrell’s entry, and not the entry of Northeast, determined whether the City had satisfied its obligation under the lease. Since the City never rectified the disrepair created by Northeast, it again was deficient in performing its obligation to rehabilitate and repair.
33rd street pier
Farrell’s lease of the 33rd Street pier was executed on March 4, 1958, simultaneously with its lease of the 35th Street pier. The lease was for a 10-year term and provided for a rent of $232,848 per annum. The covenants relative to Farrell’s obligation to repair provide:
‘ ‘ Except as otherwise provided herein, Lessee will, at its own cost and expense at all times during the said term, keep and *84 maintain the said property and every part thereof, and the structures thereon or to he erected thereon, in good and sufficient repair and condition.
“ Lessee will peaceably and quietly leave, surrender and yield up unto the possession of said Lessor * * * well and sufficiently repaired, painted and in good order and condition.”
When Farrell vacated the pier at the termination of the lease, the City conducted a survey to determine the condition of the pier, and the amount of repairs, if any, necessary to restore it to good condition. The survey indicated that Farrell failed to keep the pier in repair during its occupancy and to surrender it in good condition at the end of the term. The City thereupon commenced its action for damages based upon Farrell’s breach of its covenant to repair. The trial court awarded the City $222,349 in damages based on joint incoming and outgoing surveys.
It is well established that when an action is brought by a landlord for breach of a covenant to keep in good repair after the expiration of the lease, the cost of accomplishing what should have been done measures the lessor’s damages. (Appleton v. Marx, 191 N. Y. 81; Tobin v. Union News Co., 18 A D 2d 243, 245, affd. 13 N Y 2d 1155; 2 Rasch, New York Landlord and Tenant [2d ed.], § 634; 34 N. Y. Jur., Landlord and Tenant, § 486; Ann., 80 ALR 2d 983, 1001-1002.) “ The rule, without variation, is that under such a covenant the damages are what it would cost to put the premises in the required state of repair.” (Mudge v. West End Brewing Co., 145 App. Div. 28, 31, affd. 207 N. Y. 696; see, also, Niles v. Iroquois Realty Co., 130 App. Div. 744, 747; Markham v. Stevenson Brewing Co., 111 App. Div. 178,180, affd. 188 N. Y. 593.)
Farrell, however, contends that this rule is inapplicable. Specifically, it claims that the City waived its right to recover damages for breach of the covenant for the reason that subsequent to the termination of the lease, the City entered into a lease with Northeast providing for the demolition of the pier, and the construction of a container ship terminal. In short, Farrell contends “ the repairs would have been of no value, and consequently the City suffered no loss for which it should be indemnified.”
*85 Similar contentions have been urged before other courts, and they have been uniformly rejected, the courts holding that the lessee’s liability is unaffected by such circumstances. (See, e.g., Effect of demolition of premises by lessor, 64 L. E. A. 667; 1 McAdam, Landlord and Tenant [5th ed.], § 113, p. 458; 3 Sedgwick Damages [9th ed.], § 999h, p. 2083; 49 Am. Jur. 2d, Landlord and Tenant, § 979; cf. Appleton v. Marx, 191 N. Y. 81, supra; but see 2 Easch, New York Landlord and Tenant [2d ed.], § 637, citing only to the Eeferee’s opinion, in Appleton.) In our opinion, this view is sound, and should be adhered to. Not only does it give recognition to the fact that as a result of the lessee’s failure to repair, the lessor may have had a narrower market for his property (Rawlings v. Morgan, 114 Eng. Com. Law E. 776), but also to the fact that lessors generally will link the amount of rental charged with such covenants of repair. Indeed, to hold that a lessor waives his right to collect what the repairs would have cost because subsequent to the execution of the lease he causes the premises to be demolished would be unfair to the lessor who, in return for such covenants, charges a rental that is far less than he could have received. Consequently, the trial court correctly held that the City’s conduct with respect to the pier did not abridge or take away its cause of action.
The order appealed from should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Gibson concur.
Order affirmed, without costs.

. The City expended approximately three million dollars in performing this work. A substantial amount was expended out of insurance funds, the premiums for which had been paid by the prior lessee.

. This survey disclosed that Northeast had left many items in disrepair. The City then commenced an action against Northeast, seeking $79,465 in damages for Northeast’s failure to surrender the pier in good condition.