The CITY OF NEW YORK, Plaintiff,

v.

Thomas F. PATTON et al., Defendants.

Thomas F. PATTON and Ralph S. Tyler, Jr., Trustees of the property of Erie Lackawanna Railway Company, Defendants and Third-Party Plaintiffs,

v.

ACME FAST FREIGHT, INC., Third-Party Defendant.

No. 74 Civ. 1026.

United States District Court, S. D. New York.

April 3, 1975.

W. Bernard Richland, New York City, Corp. Counsel, for plaintiff City of New York; by Judah Dick, New York City, of counsel.

Hart & Hume, New York City, for defendant St. Paul Fire and Marine Ins. Co.; by Lewis Stockman, New York City, of counsel.

Alexander & Green, New York City, for defendants and third-party plaintiffs Thomas F. Patton and Ralph S. Tyler, Jr., Trustees of Erie Lackawanna Railway Co.; by Donald M. Dunn, Donald B. Ferens, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for third-party defendant Acme Fast Freight, Inc.; by James D. Zirin, New York City, of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

A motion has been made by defendants Thomas F. Patton and Ralph S. Tyler, Jr., Trustees of the property of Erie Lackawanna Railway Company, Debtor (Erie) for an order under Rule 12(h)(3) of the Federal Rules of Civil Procedure dismissing the complaint and the cross claims of defendant St. Paul Fire and Marine Insurance Company (St. Paul) against defendant Trustees on the grounds (a) that this court lacks jurisdiction of the subject matter and (b) that this action is in violation of Order No. 1 entered in the Debtor's reorganization proceeding by the United States District Court for the Northern District of Ohio, Eastern Division dated June 26, 1972.

The causes of action arise out of a lease entered into between the plaintiff The City of New York (City) as lessor and Erie as lessee on December 29, 1965 under which Erie took possession of Pier 21 North River in the City of New York and remained in possession from 1966 until December 31, 1971 under renewals and from December 31, 1971 until August 31, 1972 as either a holdover tenant or as a licensee under an occupancy permit. Erie surrendered possession of the premises on August 31, 1972. A joint outgoing survey was made during December 1972 by the parties. The annual rental under the last renewal was $121,000 per year. Erie was required to furnish a surety bond guaranteeing performance of the convenants of the lease and did so through St. Paul for the period January 1, 1969 through December 31, 1971, by surety bond dated July 10,

1970 in the amount of $21,000. By agreement dated July 20, 1970 Erie indemnified St. Paul to cover all loss and expense in connection with any bonds of Erie on which St. Paul became surety. Erie under the lease was responsible for rent and deferred maintenance and dredging.

Third-party defendant Acme Fast Freight Inc. (Acme) by an agreement with Erie dated September 23, 1964 was licensed by Erie to use and occupy in common Pier 21 and the bulkhead shed of Pier 20, North River. Under that license Acme allegedly became responsible for one half the maintenance and deferred maintenance. This agreement was extended to June 30, 1972, but Acme occupied the premises to on or about August 31, 1972.

The City claims $279,502.00 for deferred maintenance and dredging at Pier 21 North River and $16,934.02 for a balance of rent due for a period from January 1, 1972 to June 25, 1972 (Paragraph 13, Complaint).[1] The claim against St. Paul is for the full amount of its bond. The claim against Acme by Erie is for one half the amount found due to the City for the deferred maintenance. St. Paul has cross claimed against Erie under the indemnity agreement. St. Paul has also asked for reformation of its bond since it was written to terminate December 31, 1972 instead of December 31, 1971 the expiration date of Erie's last renewal lease.

Acme has joined in Erie's motion to dismiss under Rule 12(b)(1) and 12(h)(3).

St. Paul has further moved in connection with the motion to dismiss that it be permitted to claim against Acme if Erie is no longer a party on the basis of subrogation under Rule 13(g).

To complicate matters further, Pier 21 on or about January 7, 1973 was severely damaged by fire and the premises were subsequently included in a land fill operation for the creation of Battery Park City on December 28, 1973. The net result of these events are claims by principal and surety by way of amendment that the City abandoned Pier 21 and consequently no deferred maintenance claim should be allowed against Erie and the further claim that the abandonment by the City altered or frustrated St. Paul's obligation under its bond. These latter claims would appear to be ill founded.[2]

Section 77a of the Bankruptcy Act, 11 U.S.C. § 205(a), provides in part

"If the petition is so approved, the court in which the order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a court of the United States would have had if it had appointed a receiver in equity of the property of the debtor for any purpose. Process of the court shall extend to and be valid when served in any judicial district."

It is the claim of the City that the Reorganization Court's Order No. 1 dated June 26, 1972 does not restrain it from proceeding in this case because the claim for deferred maintenance and dredging arose after that date and that

---

1. The photostatic copy of the complaint annexed to the removal petition appears to contain the figures "1973" which have been altered in pen or pencil to "1972." The photostatic copy of the complaint annexed to the Third Party Complaint filed by Erie clearly indicates 1973. Since the parties are in agreement that possession was surrendered in 1972 the court assumes the year 1973 was a typographical error.

2. Farrell Lines v. City of New York, 30 N.Y.2d 76, 83, 330 N.Y.S.2d 358 (1972). 2 Rasch, New York Landlord and Tenant (2nd ed.), § 637. Appleton v. Marx, 191 N.Y. 81, 83 N.E. 563.

claim and the rental claim are of an administrative nature. These arguments are founded on the provision of 28 U.S.C. § 959(a) which reads:

"(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but shall not deprive a litigant of his right to trial by jury."

Defendants of course are claiming in effect that Order No. 1 is an exercise of the general equity power of the Reorganization Court within the purview of section 959(a) and that the suit is barred.

This court does not agree. Order No. 1 did not intend to enjoin suits pursuant to 28 U.S.C. § 959(a) against trustees with respect to any of their acts or transactions in carrying on business connected with the property of Erie.

Neither Diners Club, Inc. v. Bumb, 421 F.2d 396 (9th Cir. 1970) nor Baker v. Gold Seal Liquors, 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) can be read to the contrary.

Plaintiff's reliance upon Novo Enzyme Corporation v. Baker, 361 F.Supp. 337 (S.D.N.Y.1973) is well placed. The right of the plaintiff to sue the Trustees is also recognized in this Circuit on causes of action arising out of carrying on of the business by the Trustees.[3]

Under the covenant of the lease with plaintiff the tenant had until the end of the term to perform the covenants with respect to maintenance and dredging.[4] Consequently plaintiff's cause of action did not accrue until after the expiration of the term and the period during which Erie was a holdover on a month to month basis.[5]

For the reasons given and the precedents cited the motions of the defendants and third-party defendant Acme are denied. The motion of St. Paul for leave to file a claim against Acme is denied as moot.

Of course, the Reorganization Court may now wish to exercise its powers under 28 U.S.C. § 959(a) to enjoin this suit. A copy of this memorandum will be sent to that court.

So ordered.

3. Vass v. Conron Brothers, 59 F.2d 969 (2d Cir. 1932).

4. The lease provided:
"Twenty Third. Lessee will peaceably and quietly leave surrender and yield up unto the possession of Lessor, without any fraud or delay, the said property together with all structures, additions alterations, changes or replacements made thereon, at the end of said terms or other sooner termination thereof, and said property, structures, and improvements thereon shall then be well and sufficiently repaired, painted and in good order and condition."
"In the event the premises at the end of said term or other sooner termination thereof are in a state of disrepair resulting from the failure of Lessee to repair, paint and maintain said premises during said term, then and in that event or either of such events Lessee shall be required to sufficiently repair and place the premises in good order and condition as though all of such work had properly been done during such term. * * * *"
The dredging was similarly covered by the Thirty Fifth paragraph of the Lease. See complaint paragraph 6; Rasch, supra, § 660; Knutsen v. Cinque (A.D.2d 1906) 113 App.Div. 677, 99 N.Y.S. 911.

5. Section 32–C, New York Real Property Law abrogates the common law to the extent that a holdover is not held for a new term.