Gabrielli, J.
In this article 78 proceeding the Cromwell Towers Redevelopment Company, a limited partnership organized pursuant to article 5 of the Private Housing Finance Law, seeks reimbursement for and relief from taxes assessed in alleged violation of a contract executed pursuant to a resolution of the Yonkers City Council. Special Term and the Appellate Division held the action to be untimely and dismissed the petition. We reverse.
In 1971 the Redevelopment Company was formed for the purpose of constructing low and moderate income housing developments in the City of Yonkers with federally aided mortgage financing. In order to obtain this funding, the Redevelopment Company was required by the Federal Housing Administration to obtain tax abatement from the city for the term of the mortgage. Section 125 of the Private Housing Finance Law provides that a local legislative body may "by contract agree with any redevelopment company to exempt from local and municipal taxes” all or part of the value of property which represents an increase over its valuation at the time of its acquisition. The Redevelopment Company applied to the Mayor and City Council of Yonkers for a tax exemption; and on July 6, 1971 the city council adopted Resolution No. 323-1971 which provided, in pertinent part: "1. *3 That upon completion of the construction of the project * * * and pursuant to the provisions of Section 236 of the National Housing Act and Regulations thereunder * * * the aforesaid premises in the redevelopment project to be constructed * * * be exempt from local and municipal taxes other than assessments for local improvements to the extent 100% of the value of the property included in such project (except as aforesaid [the portion allocated for commercial use]) which represents an increase over the assessed valuation of the aforesaid real property, both land and improvements, acquired for the aforesaid project at the time of its acquisition by the Redevelopment Company, pursuant to Section 125 of Article V of the Private Housing Finance Law of the State of New York as amended, and pursuant to the terms and conditions of this resolution; such tax exemption to operate for so long as the Redevelopment Company’s federally aided mortgage’ (as said term is defined in Section 102 of Article V of the Private Housing Finance Law of the State of New York, as amended), on said project is outstanding, but in no event for a period of more than 40 years from the date on which the benefits of such exemption first became available and effective.” (Emphasis added.)
On August 25, 1971 the city and the Redevelopment Company entered into a contract which provided that:
"1. The City of Yonkers hereby grants to the Housing Company [the Redevelopment Company] an exemption from all local and municipal taxes, other than assessments for local improvements, to the extent of one hundred (100%) per cent of the value of the Real Estate (land and improvements thereon) included in such Housing Project which represents an increase over $79,300 (the assessed valuation of the Real Estate, both land and improvements, acquired for such Housing Project at the time of its acquisition by the Housing Company) * * *
"2. Such tax exemption shall operate for so long as the Housing Company’s federally aided mortgage’{as said term is defined in Section 102 of Article V of the Private Housing Finance Law of the State of New York, as amended) on the Housing Project is outstanding, but in no event for a period of more than forty (40) years from the date on which the benefits of this tax exemption first become available and effective.” (Emphasis added.)
For tax purposes the city acts not only on its own behalf but *4 also on behalf of the county and, thus, the resolution and contract affect county as well as city taxes.
Armed with the necessary tax exemption spelled out in the contract, the Redevelopment Company pursued .the anticipated mortgage and on November 29, 1971, it entered into a commitment contract for $12,275,000 with the Government National Mortgage Association, guaranteed by the Federal National Mortgage Association. On December 20, 1971 the Redevelopment Company issued a mortgage note and construction began.
Despite the resolution and the contract granting tax exemption, the partially completed project was assessed at $904,300 for the fiscal year July 1, 1973 to June 30, 1974, an increase of $825,000 over the assessed value prior to construction. A tax of $64,915.31 was levied and paid under protest. Subsequently the property was assessed at $2,765,700 for the fiscal year 1974-1975 and a tax of $199,720.68 computed, which tax has not been paid. County taxes were also assessed on the basis of these valuations. The Redevelopment Company petitioned city council, pursuant to section C8-5 of the City Charter, which authorized the council to "correct, cancel or remit” any tax erroneously assessed. The Redevelopment Company asserted that these taxes were invalid as violative of their contract. The council failed to act on the petition and this proceeding was brought seeking (1) review of the actions of the City of Yonkers in imposing these real property taxes, (2) an injunction restraining respondents from attempting to collect such taxes, (3) a declaration that the Redevelopment Company is partially exempt from these taxes, (4) an order compelling respondents to recompute the taxes in accord with the contract, and (5) return of the excess taxes paid under protest.
This action was challenged as time-barred under CPLR 217 because it was not commenced within four months after city council confirmed and assessed the taxes. Additionally the respondents contend that petitioner is guilty of laches and is not entitled to relief. We find neither of these arguments dispositive of the action before us and, therefore, need not consider them.
When a tax assessment is attacked as a violation of a city resolution and a valid contract, it may be challenged in a plenary action for moneys had and received (Matter of First Nat. City Bank v City of New York Finance Admin., 36 NY2d 87; New York R. T. Corp. v City of New York, 275 NY 258, *5 affd 303 US 573). This action is based, in theory, upon an implied contract obligation and would be available in the present case. But we need not approach this case on the theoretical moneys had and received basis alone, for an actual and explicit contract was entered into between the parties. Thus the basis of this action is the contract between the City of Yonkers and the Redevelopment Company.
As we have recently noted in Matter of First Nat. City Bank v City of New York Finance Admin, (supra, p 94): "Under CPLR 103 (subd. [c]), the courts are empowered and indeed directed to convert a civil judicial proceeding not brought in the proper form into one which would be in proper form, rather than to grant a dismissal, making whatever order is necessary for its proper prosecution.” This case presents a perfect example of the situation where the petitioner had a binding and valid contract with the city and mistakenly sought to enforce that contract via an article 78 proceeding. Because a proper form of action is available, we convert this proceeding to an action on the contract. The Statute of Limitations for an action arising from a contractual obligation is six years (CPLR 213) and this action was brought well within that period since the contract, having been entered into on August 25, 1971, was first breached on May 31, 1973 when city council approved the tax assessment. In converting this article 78 proceeding to an action based on contract, we find this action timely commenced.
The remaining question is whether under the city resolution and the contract, the Redevelopment Company is entitled to a tax exemption from the time they obtained the federally guaranteed mortgage or whether the exemption accrued only after completion of the project. The respondents rely solely on the language of the resolution which provides that "upon completion of the construction of the project * * * and pursuant to the provisions of Section 236 of the National Housing Act and Regulations thereunder * * * the aforesaid premises * * * be exempt from local and municipal taxes”. The contract reiterates most of the language of the resolution but specifically omits the introductory phrase "upon completion of the construction of the project.” To read this language to mean that the respondents may collect taxes on the increased value of the property while under construction is to ignore the direction of both the resolution and the contract that the tax exemption shall operate for "so long as the Redevelopment *6 Company’s 'federally aided mortgage’ (as said term is defined in Section 102 of Article V of the Private Housing Finance Law of the State of New York, as amended), on said project is outstanding”. As fully recognized by the city, a precondition to obtaining the federally guaranteed mortgage was the acquisition of a tax exemption covering any increase in value resulting from the use of that money.
It is the policy of the Federal Government and the State of New York to encourage local and municipal governments to waive or limit their real estate taxes on redevelopment projects for the purpose of stimulating the growth and development of such projects. New York has recognized the need of upgrading available living accommodations for low and moderate income families (Private Housing Finance Law, § 101) and has adopted a procedure for authorizing tax exemptions in order to further the goal of filling this great need (Private Housing Finance Law, § 125). Likewise, the Federal Government has recognized that the success of these needed housing projects is dependent to a certain extent on the taxing policies of the local communities (1968 US Code Cong & Admin News, Housing and Urban Development Act of 1968, House Report No. 1585, pp 2897-2898). Thus, where otherwise adequate financing is unavailable and, as in this case, federally guaranteed mortgages are available where local tax relief has been granted, the goal of needed housing facilities may be met. The granting of local tax exemptions is part of the overall State and Federal policy to encourage redevelopment projects and it was pursuant to these policies that the agreement was made between the municipal authorities and petitioner.
In construing the contract between the Redevelopment Company and the city, due consideration must be given to the purpose of the parties in making the contract (4 Williston, Contracts [3d ed], § 619, pp 730-733). A fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the agreement (see Farrell Lines v City of New York, 30 NY2d 76; Aron v Gillman, 309 NY 157). It was the undisputable purpose of this contract to provide the tax exemption necessary for securing the federally aided mortgage. The exemption was to run for as long as the mortgage was outstanding and thus the exemption attached at the same time the mortgage came into being, which occurred before construction began. The Redevelopment Company was entitled under the contract to a tax exemption for any increase over *7 $79,300 of the assessed value prior to construction, which resulted from the federally guaranteed mortgage and was consistent with the other clauses of the contract not pertinent to our discussion here.
We conclude that the Redevelopment Company should be awarded damages to the extent of the excess taxes paid under protest to the city and county in violation of their contract with the city; that it is not liable for taxes assessed but not paid under the terms of the contract; and that the respondents should recompute the taxes due for the fiscal years 1973-1974 and 1974-1975 consistent with this opinion.
Accordingly, the order of the Appellate Division should be reversed, the judgment entered against Cromwell Towers Redevelopment Company vacated and the case remitted to the Supreme Court, Westchester County, for entry of judgment in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, with costs, the judgment entered against Cromwell Towers Redevelopment Company vacated and the case remitted to Supreme Court, Westchester County, for entry of judgment in accordance with the opinion herein.