The CITY OF NEW YORK, Plaintiff,

v.

Thomas F. PATTON and Ralph S. Tyler, Jr., Trustees of the property of Erie Lackawanna Railway Company, Debtor, and St. Paul Fire and Marine Insurance Company, Defendants.

Thomas F. PATTON and Ralph S. Tyler, Jr., Trustees of the property of Erie Lackawanna Railway Company, Defendants and Third-Party Plaintiffs,

v.

ACME FAST FREIGHT, INC., Third-Party Defendant.

No. 74 Civ. 1026 (HFW).

United States District Court, S. D. New York.

March 31, 1978.

As Modified June 9, 1978.

W. Bernard Richland, Corp. Counsel, New York City, for plaintiff City of New York; Judah Dick, New York City, of counsel.

Hart & Hume, New York City, for defendant St. Paul Fire and Marine Ins. Co.; Lewis Stockman, New York City, of counsel.

Alexander & Green, New York City, for defendants and third-party plaintiffs Thomas F. Patton and Ralph S. Tyler, Jr., Trustees of Erie Lackawanna Railway Co.; Donald B. Ferens, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for third-party defendant Acme Fast Freight, Inc.; James D. Zirin, E. Sherrell Andrews, New York City, of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

Plaintiff, the City of New York (the City), has brought this action to recover back rent and deferred maintenance costs for its Pier 21 North River from defendant Erie Lackawanna Railway Company (Erie), which was in possession of that facility from January 1, 1966 to August 31, 1972—initially as the tenant of the City and later, after one renewal of the lease, as either a licensee under an occupancy permit or as a holdover tenant. Defendant St. Paul Fire and Marine Insurance Company (St. Paul) posted a surety bond guaranteeing performance of Erie's obligations under the lease and third-party defendant Acme Fast Freight, Inc. (Acme) was licensed by Erie to use the pier during the period of Erie's possession. The claims asserted by the various parties were previously described in a decision reported at 390 F.Supp. 1001 (D.C. 1975) and, insofar as possible, will not be reiterated here. The motions before the Court, of which there are several, will be considered *seriatim*.

As a preliminary procedural matter, Erie contends that the principal action cannot proceed until there has been complete compliance with Order No. 633 of the Reorganization Court dated June 16, 1977. Order No. 633 provides in part that Erie is to be substituted for the Trustees as a party defendant and that execution of any judgment obtained against Erie is to be stayed pending further order of the Reorganization Court. In accordance with Erie's request, the Court hereby adopts the terms of Order No. 633 as its own. See Rules 21, 24(c), Fed.R.Civ.P.

The City has made a motion for partial summary judgment against St. Paul in the amount of $16,934.02 on the second cause of action which is brought to recover net pre-Bankruptcy rental charges owed to the City by Erie. St. Paul has cross-moved for summary judgment reforming the terms of its bond by changing all references to the expiration date of the lease between Erie and the City from December 31, 1972

to December 31, 1971. Since the claim for back rent covers the period from December 31, 1971 through August 31, 1972, granting St. Paul's motion would relieve it of any possible liability under the second cause of action.

The City and St. Paul are apparently in agreement that the bond erroneously described the renewal period of the lease for the pier, however, they differ as to the legal import of that error.[1] The City contends that the mistake was made by the defendants alone and that the bond is therefore not subject to reformation in the absence of fraud or other misconduct by the City. It further contends that reformation is barred by the doctrine of laches or equitable estoppel. St. Paul contends that the mistake was mutual and that it is properly remedied by reformation since "there can be no question that if brought to the attention of the parties at [the time the bond was issued], all would have agreed that the expiration date in the bond was an error." Affid. of Lewis Stockman, Esq., sworn to Nov. 16, 1977, at 3.

Although both the City and St. Paul urge that these competing claims can be resolved as a matter of law upon cross-motions for summary judgment, I conclude that there is at least one material factual issue which makes it impossible to dispose of the second cause of action prior to a trial on the merits. It is the City's contention that the error was unilateral in essence because the "clerk in charge of security deposits" and those who approved the bond on behalf of the City Corporation Counsel and Comptroller cannot be charged with knowledge of the proper lease termination date or the duty of ascertaining that it conforms to the date set forth in the surety bond. However, it is clear that *someone* negotiated a renewal of the lease on behalf of the City. If that person "receive[d] notice or acquire[d] knowledge [of the actual renewal term] while acting in the course of his employment [and] within the scope of his authority," and if that information was material, the City would, under settled principles of agency law, be charged with constructive knowledge even if the City employee or agent never communicated what he knew to others within the City bureaucracy. 3 W. Fletcher, Cyclopedia of Corporations § 788 (Perm. ed. 1975 rev. vol.); *accord*, 2 Mechem on Agency, ch. V, pt. III (2d ed. 1914). In view of the absence of any statement pursuant to Local Rule 9(g) or affidavit pertaining to this question, it is impossible for me to determine whether the City as a corporate entity had knowledge of the terms of the lease under this formulation. Accordingly, since both St. Paul's reformation motion and the City's arguments regarding unilateral error and equitable estoppel turn on resolution of this question, the cross-motions for summary judgment must be denied at this juncture.

The City has also moved for summary judgment on the issue of liability on the first and third causes of action for deferred maintenance and dredging expenses. Erie argues that any recovery under these causes would constitute unjust enrichment because the City has no intention of spending any money to restore the pier which was demolished after Erie surrendered possession of it. Although I fully agree that the City is pursuing a recovery for a theoretical loss which should not be compensated, *see* Roberts, *1976 Survey of New York Law*, 28 Syr.L.Rev. 353, 360–63 (1977), I am obliged to follow the unambiguous New York cases holding to the contrary. *City of New York v. Pennsylvania Railroad Co.*, 37 N.Y.2d 298, 372 N.Y.S.2d 56, 333 N.E.2d 361 (1975); *Farrell Lines, Inc. v. City of New York*, 30 N.Y.2d 76, 330 N.Y.S.2d 358, 281 N.E.2d 162 (1972). Summary judgment on the question of Erie's liability for deferred maintenance and dredging expenses is therefore granted.

---

1. Discovering the range of agreement on factual issues is somewhat difficult inasmuch as the parties have submitted more than 100 pages of affidavits and memoranda and nearly 20 documentary exhibits without making any serious attempt to comply with Local Rule 9(g). Needless to say, it is hoped that counsel will in the future follow the procedures set forth in the Local Rules.

St. Paul argues that its situation is distinguishable because it only agreed to indemnify the City for losses, an obligation which it believes does not extend to the payment of theoretical damages. However, if the City is entitled to recover the costs of deferred maintenance from Erie under New York law and is unable to do so because of Erie's bankruptcy, it is clear that the City has sustained a monetary loss for which St. Paul must provide indemnity. *See Stogop Realty Co. v. National Surety Co.*, 216 App. Div. 198, 200–01, 215 N.Y.S. 90, 93–94 (1st Dep't), *aff'd*, 243 N.Y. 622, 154 N.E. 631, 217 A.D. 555, 217 N.Y.S. 106 (1926). Summary judgment on the question of liability for deferred maintenance and dredging is therefore also granted against St. Paul as surety.

■ Since it has been held liable as a matter of law on the first and third causes of action, Erie moves for summary judgment on the question of Acme's liability for one-half of the City's recovery against Erie. The Erie motion is based on the fourth paragraph of its license agreement with Acme, providing in pertinent part as follows:

> [Acme] agrees to reimburse Railroad for one-half (½) of the cost of all expenses incurred by the Railroad Company in connection with its and Licensee's use of the Pier Property including, but not limited to, one-half of the cost of electricity, insurance, heat, sprinkler and fire alarm service and maintenance, including deferred maintenance at the expiration of Railroad Company's lease of the Pier Property . . .

Erie places great stress upon the proposition that it has already incurred liability as a result of the grant of the City's summary judgment motion on the issue of liability for deferred maintenance. However, Erie conveniently overlooks the fact that Acme only agreed to *reimburse* Erie for one-half of certain described expenses, an obligation which has repeatedly been held to arise only when the other party has already made some disbursement. *See, e. g., Woerz v. Schumacher*, 161 N.Y. 530, 536, 56 N.E. 72,

73 (1900); *379 Madison Avenue, Inc. v. Stuyvesant Co.*, 242 App.Div. 567, 569, 275 N.Y.S. 953, 955 (1st Dep't 1934), *aff'd*, 268 N.Y. 576, 198 N.E. 412 (1935); *see also Wisconsin Gas & Electric Co. v. United States*, 322 U.S. 526, 532, 64 S.Ct. 1106, 88 L.Ed. 1484 (1944).

*379 Madison Avenue, Inc. v. Stuyvesant Co.* involved a suit on a lease brought by a lessor to recover attorney's fees and disbursements incurred in prosecuting a prior action to evict the defendant tenant and related proceedings. The tenant argued that bringing the second lawsuit constituted an impermissible "splitting" of a cause of action, but the Appellate Division, First Department, rejected that contention and held that the tenant's agreement to "reimburse the Landlord for the expense of attorneys' fees and disbursements . . . on the first day of the month following the incurring of such respective expenses" gave rise to a duty of indemnification which accrued only after the landlord had paid his lawyers. On reargument, both the City and Erie argue that under the more recent case of *Columbia Corrugated Container Corp. v. Skyway Container Corp.*, 37 A.D.2d 845, 326 N.Y.S.2d 208 (2d Dep't 1971), *aff'd mem.*, 32 N.Y.2d 818, 345 N.Y.S.2d 1012, 299 N.E.2d 257 (1973), the critical word in the Erie-Acme license agreement is not the term "reimburse" relied on in *379 Madison Avenue,* but rather the term "incurred." I disagree.

Much as in *379 Madison Avenue, Columbia Corrugated* involved a defendant-lessee's claim that its lessor was improperly attempting to split a cause of action by bringing a suit to recover the expenses of an earlier, successful action for back rent. However, the Appellate Division, First Department, held that the plaintiff-lessor was barred from recovering by virtue of his failure to seek attorneys' fees in the earlier lawsuit. Dispositive, in the Court's view, was the language of the lease, which did not provide for *reimbursement* of the expense of attorneys' fees incurred as a result of the lawsuit, but for such expenses to be "*paid* on or before the next installment of

rent thereafter to become due." (Emphasis added). The Court of Appeals affirmed the decision of the Appellate Division and added that "[t]o the extent that the determinations below are inconsistent with the holding in *379 Madison Avenue v. Stuyvesant Co.* . . . that decision must be deemed overruled." 32 N.Y.2d at 818, 345 N.Y.S.2d at 1012, 299 N.E.2d at 257. As a result of that somewhat cryptic notation, the City and Erie suggest that an action for reimbursement of expenses "incurred" no longer requires that there be a prior payment by the plaintiff.

What the parties seeking reargument fail to recognize, however, is that *Columbia Corrugated* did not involve a reimbursement agreement. It is, of course, true that the New York Court of Appeals, through its memorandum decision in *Columbia Corrugated,* apparently wanted to disown some portion of the decision in *379 Madison Avenue,* but I am unable to give effect to its wishes for the simple reason that I am unable to determine what has been overruled. I note, in this regard, that since the Court of Appeals limited its discussion to the observation that it was overruling *379 Madison Avenue* "[t]o the extent that [it was] inconsistent," it appears that my confusion is shared by other judges.

Accordingly, I hold that until Erie makes payment to the City, the motion for summary judgment on the third-party complaint must be denied as premature.

The parties are to complete discovery by April 30 and a completed pre-trial order is to be submitted to the Court at a pretrial conference to be held on Friday, May 12, 1978 at noon.

SO ORDERED.