OPINION OF THE COURT
Jay Stuart Dankberg, J.
Should a Housing Judge hear proof of every category of counterclaim that may be pleaded in a summary proceeding? Does the answer change if, in a residential printed form lease, there is a clause which purports to bar all such counterclaims?
These questions are raised by a motion by petitioner landlord for an order severing all counterclaims of respondents tenants in this nonpayment summary proceeding. The basis of the motion is a clause in the 1979 revision of the Real Estate Board “standard form” lease which provides that no counterclaim will be brought by tenant in any dispossess proceedings commenced by owner.
*410 Involved in this proceeding are two separately pleaded counterclaims. The first contains two subdivisions; one in paragragh 17 of the answer, the other in paragraph 18. The first subdivision claims damages for alleged destruction of personal property due to water leakage resulting from landlord’s alleged failure to make repairs; the second seeks damages resulting from “inhabitable cold” [sic]. The second pleaded counterclaim concerns damages due to an alleged breach of the covenant of quiet enjoyment.
“Historically, landowners were exclusively, relegated to the cumbersome and time consuming common-law action of ejectment to remove those unlawfully on their property. In order to assist the landowner, the Legislature devised a statutory scheme whereby people” might obtain a summary means of obtaining a speedy and inexpensive adjudication of disputes between landlord and tenant as to the right of possession of real property (Fisch v Chason, 99 Misc 2d 1089, 1090; see Lex-56th Corp. v Morgan, 24 Misc 2d 48, lv to app den 13 AD2d 912; Gardens Nursery School v Columbia Univ. in City of N. Y., 94 Misc 2d 376; cf. Michaels v Fishel, 169 NY 381, 388-391).
Through the years, the Legislature has expanded the scope of the summary proceeding statutes to today encompass in a specialized Housing Part of the Civil Court (CCA, § 110) jurisdiction to hear many categories of landlord-tenant related litigation in addition to the traditional causes of landlord initiated summary proceedings “to recover possession of residential premises to remove tenants therefrom, and to [obtain] judgment for rent due” (CCA, § 110, subd [a], par [5]).
Historically, too, a tenant was extremely limited in the offsets or defenses that could be interposed against a “traditional” nonpayment or holdover summary proceeding. The Legislature has also acted in this area to extend the rights of litigants.
Under present New York law, persons sued in a summary proceeding have a statutory right to interpose “any legal or equitable defense, or counterclaim”; the court “may render affirmative judgment for the amount found due on the counterclaim” (KPAPL, § 743; see 14 Carmody *411 Wait 2d, NY Prac, §§ 90:252-253; 33 NY Jur, Landlord and Tenant, §§ 104, 109; 34 NY Jur, Landlord and Tenant, §300).
The use of the word “may” in the statute vests discretion in the court to take proof on any counterclaim that is otherwise properly pleaded in a summary proceeding. Thus, if a counterclaim has been dilatorily or frivolously interposed, the court has the power to either sever it for later trial or dismiss it without prejudice to the bringing of an independent action (see Bonner v Nash, 70 Misc 2d 752 [App Term]).
In this regard, it has been held that it is within, the court’s discretion to hear a counterclaim based upon a claimed breach of the duty to repair (240 West 37th St. Co. v Lippman, 241 App Div 529) and a counterclaim (for water damages) sounding in negligence for alleged breach of the covenant of quiet enjoyment (Harfried Realty Co. v Spuyten Amusement Corp., 150 Misc 904 [App Term]).
However, the RPAPL 743 right to counterclaim is not only limited by the discretionary powers of the court. It has been held that the statutory privilege may be waived by a lease clause which prohibits counterclaims in a summary proceeding (Cable Assoc. v Sobel, NYLJ, Dec. 9, 1980, p 10, col 4 [App Term]; Squadron Blvd. Realty Co. v Emrite, Inc., 99 Misc 2d 975; Cosmopolitan Assoc. v Ortega, 90 Misc 2d 437 [Posner, J.]; Rasch, Landlord and Tenant, Summary Proceedings [2d ed], § 1328).
In the instant “standard form” lease, there appears to be no reciprocal clause which might purport to bar an owner from asserting a counterclaim if a tenant should be the one to institute litigation (cf. CCA, § 208, subd [d] regarding a limit on counterclaims in actions begun by the New York City Department of Housing Preservation and Development). However one-sided the present clause may thus appear, there has been no demonstration here that this provision is unconscionable as a matter of law (Real Property Law, § 235-c). In fact, a similar clause was held to be consistent with public policy (Marinco Realty v Fisch, NYLJ, Sept. 10, 1979, p 14, col 2; Amazon Mgt. Corp. v Paff, 166 Misc 438 [App Term]).
*412 Due to the inherent lack of negotiability of the clauses in a “standard form” lease (the phrase “take it or leave it” is often used to describe the full extent of negotiations) and since the provision is usually a bare clause and thus not sufficient to spell out a waiver of a right bestowed by the Legislature, some courts have been extremely reluctant to enforce the “no counterclaim” clause. Most courts, proceeding according to classic lease construction, have usually interpreted such a clause strictly against the landlord (Wasservogel v Meyerowitz, 300 NY 125; Broad Props. v Wheels, Inc., 43 AD2d 276, affd 35 NY2d 821; 3 Warren’s Weed, New York Real Property [4th ed], § 10.03).
It is for these reasons that this type of clause has been more often enforced in decisions involving commercial tenancies (where there is ostensibly more coequal negotiating power than with residential tenancies). It has also been enforced in proceedings concerning residential tenancies where the counterclaim is not inextricably related to. the landlord’s claim for rent (Mid-City Assoc. v Wolf & Co., NYLJ, Jan. 23, 1980, p 10, col 4 [App Term]; 40 Assoc. v Quinn, NYLJ, Oct. 23, 1978, p 6, col 2 [App Term]; 72nd Tenants Corp. v Rosen, NYLJ, Dec. 27, 1973, p 15, col 2 [Marks, J.]; Tankoos-Yarmon Hotels v Smith, 58 Misc 2d 1072 [App Term]).
In this regard, case law is to the effect that the lease “no counterclaim” clause does not bar a counterclaim in a holdover summary proceeding (Roosevelt Nassau Operating Corp. v M.N.S. Brandell, Inc., NYLJ, Feb. 27, 1974, p 19, col 5). Also, it cannot prohibit a guarantor under a lease from asserting a counterclaim since he is not “the tenant” (Irving G. Tire Co. v Atlantic Intersport, NYLJ, March 4, 1980, p 11, col 4 [App Term]). Nor does it preclude proof of the existence of an affirmative defense to the claim for rent (Review Co. v Forden Cleaners, NYLJ, May 21, 1976, p 9, col 3 [App Term]; 34 NY Jur, Landlord and Tenant, § 306). Moreover, it does not forbid testimony in the nature of a setoff (Prime Realty Holdings Co. v Federated Adj. Co., NYLJ, Feb. 1, 1980, p 13, col 4 [App Term]; Myrtle Leasing Corp. v Codato Corp., NYLJ, April 27, 1979, p 14, col 4 [App Term]; Green v Taft, NYLJ, Oct. 2, 1978, p 13, col 6 [App Term]).
*413 Therefore, upon the theory that “the fact that the tenant had claimed the landlord’s failure to supply services which were a vital and integral part of the leasing arrangement” (72nd Tenants Corp. v Rosen, p 15, col 2, supra), it has also been held that a bare “no counterclaim” provision does not waive the right to interpose the same where rent may be abated for an alleged failure to provide essential services (Horing v Langlieb, NYLJ, July 8, 1974, p 13, col 6 [App Term]; Steinberg v Carreras, 77 Misc 2d 774 [App Term]; Levine v Ehrenberg, NYLJ, June 11, 1973, p 18, col 2 [App Term]). Similarly, the clause may not bar proof on a counterclaim based upon an alleged breach of the warranty of habitability (Cosmopolitan Assoc. v Ortega, 90 Misc 2d 437, supra).
Clearly, such allegations are a claimed breach of the rental agreement and involve factual issues easily triable by the court without delay and with the parties already present. Since these claims are certainly “part and parcel” of the landlord’s demand for rent (Great Park Corp. v Goldberger, 41 Misc 2d 988 [Starke, J.]), it is apparent that the summary proceeding will not be bogged down in collateral issues or extraneous matter.
It thus becomes the obligation of the court to examine the nature of each pleaded counterclaim when there is a proper motion to sever. A determination must be made whether any pleaded counterclaim alleges reduction or lack of essential services, or interference with the right to possession, use or enjoyment of the demised premises and might thus be inextricably related to the claim for rent (Horing v Langlieb, supra; Steinberg v Carreras, supra; 72nd Tenants Corp. v Rosen, supra).
Since the primary purpose of the summary proceeding statütes is the speedy and inexpensive determination of landlord and tenant controversies, and based upon all of the above, the initial question is answered: where no delay shall result, all relevant counterclaims should be retained in the court’s discretion and all issues expeditiously tried together in the Housing Part of the Civil Court. However, even where there might be some minimal delay inherent in the trial of a counterclaim, where it is so intertwined with a defense so as to be part and parcel thereof, the court *414 should entertain the counterclaim, exercising its discretion to expedite disposition of the entire controversy, avoid multiplicity of other lawsuits between the parties to accomplish the same result, do speedy justice for all and eliminate greater delay and expense (Cosmopolitan Assoc. v Ortega, supra; Willis Realty Corp. v Gilsan Tavern, NYLJ, April 10, 1978, p 12, col 4 [Mercorella, J.]; Great Park Corp. v Goldberger, supra).
Certainly, “anything which will afford even speedier justice is not opposed to the philosophy of the summary proceeding” (Metropolitan Life Ins. Co. v Carroll, 43 Misc 2d 639, 641 [App Term]). The key is to not “inordinately delay a disposition of the primary claim” (Tankoos-Yarmon Hotels v Smith, 58 Misc 2d 1072, 1073, supra).
It is also for the reasons above set forth that the second question is answered: the existence of a bare “no counterclaim” clause in a residential printed “standard form” lease does not change the answer to the first question posed. The court’s discretion should not be taken away from it by such a lease clause.
In the instant proceeding, consideration of the pleaded counterclaims will not, in any way, delay determination of the litigation. Thus, to the extent the counterclaims relate to whether rent is due and whether essential services were provided or some other “inextricably related” claim is made, the motion should be denied.
It is therefore held that both the first subdivision of the first counterclaim and the second counterclaim are properly interposed (240 West 37th St. Co. v Lippman, 241 App Div 529, supra; Harfried Realty Co. v Spuyten Amusement Corp., 150 Misc 904, supra). So, too, is the second subdivision of the first counterclaim since it (however inartfully phrased) plainly involves a claim based upon an alleged failure to provide essential services (proper amount of heat) and is thus “inextricably related” to the landlord’s claim for rent.
Therefore, the motion to sever is denied in all respects.
Finally, the case of Orlowsky v East House Enterprises (32 Misc 2d 664 [App Term]), cited by movant as authority for this motion, apparently has been implicitly overruled *415 by Levine v Ehrenberg (supra; see Steinberg v Carreras, 77 Misc 2d 774, 775, supra [Quinn, J., concurring]). Movant should not be faulted, however, for making reference to this 1961 case. It is still cited as reliable authority in Rasch (Landlord and Tenant, Summary Proceedings [2d ed], § 1328) and in 14 Carmody-Wait 2d, NY Prac (§ 90:252, n 17). These two usually accurate sources should revise the applicable sections.