OPINION OF THE COURT
Lucy Billings, J.
In this nonpayment proceeding to recover possession of leased commercial premises, petitioner landlords have moved for summary judgment on respondent’s liability for the rent and additional rent claimed in the petition, but leaving determination of the amounts for trial. (CPLR 3212 [b], [e].) Petitioners also have moved to dismiss respondent tenant’s five remaining affirmative defenses (CPLR 3211 [b]), and three remaining counterclaims for failure to state a claim (CPLR 3211 [a] [7]), or as impermissible in this proceeding. (CPLR 3211 [a] [6].) For the reasons explained below the court grants petitioners’ motion to dismiss respondent’s remaining defenses only as to its eighth defense and remaining counterclaims only as to the first and *871 fourth counterclaims, to the extent delineated below, and otherwise denies petitioners’ motion.
I. First Affirmative Defense
Respondent’s first affirmative defense of failure to state a claim is not subject to a motion to dismiss, as this defense remains open to respondent throughout the action, until petitioners prevail through summary judgment or trial. (Cromwell v Le Sannom Bldg. Corp., 177 AD2d 372 [1st Dept 1991]; Salerno v Leica, Inc., 258 AD2d 896 [4th Dept 1999]; D’Agostino v Harding, 217 AD2d 835, 836 [3d Dept 1995].) Therefore the court denies petitioners’ motion to dismiss respondent’s first defense. (CPLR 3211 [b].)
II. Fifth Through Eighth Affirmative Defenses
Respondent’s fifth through eighth affirmative defenses all center around the claim that respondent is not obligated to pay rent and additional rent until petitioners have repaired the premises. A condition precedent to this claim is notice to petitioners that respondent was availing itself of this remedy under paragraph 9 of the lease. The crux of the dispute is whether respondent complied with paragraphs 9 and 28, governing notices. Paragraph 9 provides:
“(a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner. . . . (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent . . . thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner. . . . After any such casualty, Tenant shall cooperate with Owner’s restoration by removing from the premises as promptly as reasonably possible, all of Tenant’s salvageable inventory and movable equipment, furniture, and other property.” (Affidavit of Frank Ring, exhibit A.)
Paragraph 28 provides:
“Except as otherwise in this lease provided, a bill statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of *872 Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner may designate by written notice.” (Id.)
Petitioners concede that they received a notice from respondent dated January 16, 2004, by regular mail, entitled “Flood Damage to 5th Floor, 251 Park Avenue South, New York, New York” (the demised premises), and stating:
“As you are aware from your inspection of the Demised Premises on Tuesday, January 13, 2004, the bursting of the sprinklers on January 11, 2004 has flooded the entire Demised Premises. As of January 12, 2004, Tenant cannot and is not using the Demised Premises for any purpose. In addition, the lack of operational sprinklers and intermittent heat has rendered the Demised Premises wholly unusable. We shall abate all rent and additional rent until the Demised Premises has been fully restored to operation.” (Id., exhibit H.)
Petitioners further concede that they responded to respondent’s notice by specifically referring to lease paragraph 9, objecting to the notice because they claimed the premises were fully usable, but never specifically objecting to the regular rather than registered or certified mailing. Petitioners’ response does state:
“Finally, even if your alleged conditions existed, and especially as they did not, your failure to notify the owner in the manner provided for in the lease precludes you from applying for relief provided for in paragraph 9 of the Lease. Your premises were never unusable and certainly they are not now.” (Id., exhibit I.)
The question thus boils down to whether respondent’s use of regular rather than registered or certified mailing to notify petitioners of the premises’ condition bars the tenant’s substantial rent abatement claim for a condition that rendered the premises wholly unusable. For a combination of reasons, as explained below, the lease’s mailing requirement does not bar respondent’s rent abatement claim.
*873 A. Waiver of the Registered or Certified Mailing Requirement
While petitioners in their response to respondent’s notice may have had lease paragraph 28’s registered or certified mail provision in mind, their failure to refer to that provision by either its paragraph number or its contents at best leaves respondent guessing. At worst, by both preceding and following the objection with refutations of respondent’s alleged conditions, petitioners’ response misleads respondent into believing that their objection pertains to the absence of the requisite conditions for respondent’s notice to be applicable.
To the extent lease paragraph 28’s registered or certified mail requirement governs paragraph 9’s requirement for immediate notice of damage from a casualty, petitioners’ failure to object promptly and specifically to the means by which respondent transmitted its notice, while objecting to its substance, waived any defect in the mailing. (Rower v West Chamson Corp., 210 AD2d 7 [1st Dept 1994]; Dean v Tappan Wire & Cable, Inc., 2002 NY Slip Op 40377[U] [App Term, 2d Dept 2002]; see Miller v MMT Corp., 182 Misc 2d 670, 673-674 [Civ Ct, NY County 1999].) This case is not one where petitioners received no notice of the casualty or received notice too late to respond effectively. (Mlcoch v Smith, 173 AD2d 443, 444-445 [2d Dept 1991]; see Milltown Park v American Felt & Filter Co., 180 AD2d 235, 237-238 [3d Dept 1992]; Marina Towers Assoc. v Stacy’s Landing, 2003 NY Slip Op 51361[U] [App Term, 1st Dept 2003].) Although respondent did not observe all the formalities of paragraph 28’s requirements for notice, petitioners admit not only that they received the written notice dated January 16, 2004, but that they also inspected the premises Monday, January 12, and were immediately made aware the sprinklers had burst Sunday, January 11, 2004 (Ring affidavit, exhibits H, I), “causing a water leakage” in the premises. (Id., exhibit I.) Petitioners thus received notice immediately, at least the next business day after the claimed casualty, in person, and also in writing by mail, and responded as necessary, rendering any defective service academic. (Rower v West Chamson Corp., 210 AD2d 7 [1994]; Mlcoch v Smith, 173 AD2d at 444-445; see Miller v MMT Corp., 182 Misc 2d at 671, 674.)
Significantly, petitioners neither claim nor show any adverse effect from noncompliance with paragraph 28’s authorized means of mailing. (Miller v MMT Corp., 182 Misc 2d at 674.) Thus any noncompliance was technical and insufficient to invalidate respondent’s exercise of the remedy under lease *874 paragraph 9. (Mlcoch v Smith, 173 AD2d at 445; Dean v Tappan Wire & Cable, Inc., 2002 NY Slip Op 40377[U], *1.)
B. Application of the Registered or Certified Mailing Requirement
Even if petitioners’ response to respondent’s notice did not waive any defect in the mailing, under a reasonable construction of the lease, paragraph 28’s registered or certified mail requirement does not govern paragraph 9’s notice requirement. Paragraph 9 simply requires that the “Tenant shall give immediate notice to Owner” of damage to the leased premises from a casualty. The notice must be immediate, but need not be in writing or mailed by any particular means to any particular address. The requirement for immediacy, but not for a writing or cumbersome mailing procedures, is consistent with the exigent circumstances being addressed, where both time and conditions likely would render such requirements unrealistic. (Matter of Wallace v 600 Partners Co., 86 NY2d 543, 547-548 [1995]; City of New York v Farrell Lines, 30 NY2d 76, 82-83 [1972]; Tri-Messine Constr. Co. v Telesector Resources Group, 287 AD2d 558 [2d Dept 2001].) Immediate notice alone triggers the remaining provisions regarding a casualty, if the premises are in fact damaged by a casualty. (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 476 [2004].)
Lease paragraph 28 requires the tenant to give any notices to the owner by registered or certified mail. Paragraph 28’s preceding provision, setting forth the requirements for the owner’s notices to the tenant, is introduced by the qualifying phrase “[e]xcept as otherwise in this lease provided.” (Ring affidavit, exhibit A, 11 28.) That preceding provision includes other qualifying phrases not repeated in the immediately following provision regarding the tenant’s notices to the owner, e.g.: notice “which Owner may desire or be required to give,” shall be “deemed sufficiently given or rendered if,” “in writing,” and “the time of . . . the giving of such notice or communication shall be deemed to be the time when the same is . . . mailed ... as herein provided.” (Id.) Yet all these qualifiers are implicit in the provision regarding the tenant’s notices to the owner; if explicitly added, none would change the provision’s meaning. Petitioners offer no logical or legal reason why the phrase “[e]xcept as otherwise in this lease provided” does not similarly carry over to qualify the tenant’s notice to the owner and thus except paragraph 9’s notice requirement from paragraph 28’s application. (Id.)
*875 More importantly, to permit lease paragraph 28, regarding the tenant’s notices to the owner generally, to supersede paragraph 9, regarding the tenant’s notice to the owner in the specific exigent circumstances of a casualty, would completely negate paragraph 9’s notice requirement and impose writing and mailing requirements absent from paragraph 9’s plain terms. (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d at 475; Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]; Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 72 [1978].) Paragraph 9 may reasonably be read in isolation from paragraph 28’s written notice obligations. (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d at 476; Matter of Wallace v 600 Partners Co., 86 NY2d at 548.) For the owner’s notices to the tenant of either an election to terminate the lease or the premises’ readiness for reoccupancy, paragraph 9 imposes its own “written notice” requirements, and in the former instance a time requirement, “within 90 days” after the casualty, as well as the writing requirement. (Ring affidavit, exhibit A, 11 9 [d]; see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d at 476.) For the tenant’s notice to the owner of damage from a casualty, paragraph 9 distinctly omits the writing requirement, but imposes a time requirement, “immediate.” (Ring affidavit, exhibit A, 11 9 [a].) To impose writing and mailing requirements would engraft a different procedure not specifically intended for the circumstances of a casualty. (Matter of Wallace v 600 Partners Co., 86 NY2d at 548; City of New York v Farrell Lines, 30 NY2d at 82-83; Tri-Messine Constr. Co. v Telesector Resources Group, 287 AD2d 558 [2001].) Had the parties intended the writing requirements in paragraphs 9 (d) and 28 and the registered or certified mailing requirement in paragraph 28 to impede notice to the owner of a casualty, the parties could have negotiated and included these explicit terms. (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d at 476; Rowe v Great Atl. & Pac. Tea Co., 46 NY2d at 72.)
In construing the lease, the court must seek to avoid an interpretation that would render a provision ineffective. (Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403-404 [1984]; Helmsley-Spear, Inc. v New York Blood Ctr., 257 AD2d 64, 69 [1st Dept 1999]; Yoi-Lee Realty Corp. v 177th St. Realty Assoc., 208 AD2d 185, 190 [1st Dept 1995]; 17-19 W. 34th St. Realty v Cremsen Tide, NYLJ, Jan. 12, 2000, at 27, col 3 [Civ Ct, NY County].) According to petitioners’ interpretation of paragraph 28, paragraph 9’s requirement that the tenant give *876 the owner immediate notice of the damage, in any form and by any means feasible, would be of no effect.
Paragraph 28 does not pertain to casualties and thus does not constrict the tenant’s notice of a casualty to the time- and resource-consuming procedures entailed in registered or certified mail. Paragraph 28 excepts the circumstances provided for in paragraph 9 insofar as it pertains to both the tenant’s notice of damage from a casualty and the owner’s “written notice to Tenant, given within 90 days” after the casualty, of an election to terminate the lease or “written notice” of the premises’ readiness for reoccupancy. (Ring affidavit, exhibit A, 1i 9 [d].) This interpretation gives effect to both paragraphs. (Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d at 404; 17-19 W. 34th St. Realty v Cremsen Tide, NYLJ, Jan. 12, 2000, at 27, col 3.) It is neither contradictory nor implausible to require: (1) that notice of a casualty be immediate but not necessarily in writing, while (2) after the conditions have been assessed, that notice of termination be within 90 days and in writing, and (3) after the conditions have been repaired, that notice of readiness for reoccupancy be in writing but not within any time frame. (Ring affidavit, exhibit A, 1Í 9.) It is similarly consistent and plausible to require, in less exigent circumstances: (1) that notices be in writing but not within any time frame, (2) that the owner’s notices be by any of various means but if mailed, by registered or certified mail, and (3) that the tenant’s notices be by registered or certified mail. (Id. K 28; see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d at 476; Matter of Wallace v 600 Partners Co., 86 NY2d at 548; City of New York v Farrell Lines, 30 NY2d at 82-83.)
C. The Premises’ Condition
Petitioners maintain that even if respondent’s notice was effective, the leased premises were never unusable so as to trigger a rent abatement. The court may dismiss a claim or defense where extrinsic evidence conclusively disproves pleaded facts critical to the claim or defense. (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Ark Bryant Park Corp. v Bryant Park Restoration Corp., 285 AD2d 143, 150 [1st Dept 2001]; Ladenburg Thalmann & Co. v Tim’s Amusements, 275 AD2d 243, 246 [1st Dept 2000].) The court may not rely on facts alleged by petitioners to defeat defenses unless the evidence demonstrates the absence of any significant dispute regarding those facts and completely negates the answer’s allegations. (Muhl v Ambassador Group, 251 AD2d 130 [1st Dept 1998]; Nahrebeski v Molnar, 286 AD2d *877 891 [4th Dept 2001]; Warwick v Cruz, 270 AD2d 255 [2d Dept 2000]; Abney v Lunsford, 254 AD2d 318 [2d Dept 1998].)
Respondent’s amended answer alleges that a sprinkler in the leased premises burst on January 11, 2004, flooding the premises, and forcing respondent to cease all business there. Although the water eventually was removed, the premises remained unusable due to the substantial damage that the flooding caused and that petitioners have never repaired. The damage forced respondent to remove its personal property from the premises and operate elsewhere. While these allegations are under the heading “COUNTERCLAIMS,” which follow the conclusory defenses, respondent’s pleading, liberally construed most favorably to the pleader, permits the inference that the premises were unusable. (Ring affidavit, exhibit D, at 4-5, 1Í1Í1-4, 7; see Corcoran v National Union Fire Ins. Co. of Pittsburgh, 143 AD2d 309, 311 [1st Dept 1988]; Corcoran v Becker, 140 AD2d 62, 67 [1st Dept 1988]; Warwick v Cruz, 270 AD2d 255 [2000]; Abney v Lunsford, 254 AD2d 318 [1998].)
Petitioner Frank Ring’s allegations that the sprinkler was repaired January 20, 2004, and the leak did not render the premises unusable, although supported by photographs, do not conclusively disprove respondent’s pleaded facts. The photographs do not necessarily depict, for example, the presence or absence of unsafe structural conditions. Ring’s alleged facts, rather than negating any significant dispute regarding those facts, simply cast the answer’s allegations into sharp dispute. The court may not resolve these inconsistencies in parties’ allegations in the context of a motion to dismiss defenses. (Nahrebeski v Molnar, 286 AD2d 891 [2001]; Matter of Harrison v State of New York, 262 AD2d 833, 834 [3d Dept 1999]; Connelly v Warner, 248 AD2d 941, 943 [4th Dept 1998].)
In addition to Ring’s own observations and his photographs, Ring relies on an adjuster’s unsworn inspection report that the premises were habitable. Even were the court to look to these facts to defeat a pleading (see Leon v Martinez, 84 NY2d at 87-88; Ladenburg Thalmann & Co. v Tim’s Amusements, 275 AD2d at 246; IMO Indus. v Anderson Kill & Olick, 267 AD2d 10, 11 [1st Dept 1999]), the report is hearsay and therefore not a vehicle for facts that might support dismissing the pleading. (Arriaga v Michael Laub Co., 233 AD2d 244 [1st Dept 1996]; Nahrebeski v Molnar, 286 AD2d 891 [2001]; Woods v Kurz, 258 AD2d 932 [4th Dept 1999].) Ring does not lay a foundation for the report’s admissibility as a business record or as another excep *878 tion to the rule against hearsay. (E.g., CPLR 4518 [a]; Matter of Leon RR, 48 NY2d 117, 123 [1979]; Holliday v Hudson Armored Car & Courier Serv., 301 AD2d 392, 396 [1st Dept 2003]; see Republic W. Ins. Co. v RCR Bldrs., 268 AD2d 574, 575 [2d Dept 2000].)
Finally, Ring alleges that respondent failed to remove its “salvageable inventory and movable equipment, furniture, and other property” from the premises. (Ring affidavit, exhibit A, 1f 9 [a].) Again, petitioners’ alleged facts, rather than conclusively disproving that respondent removed its personal property, as the amended answer alleges, simply dispute respondent’s pleaded facts.
D. The Eighth Defense’s Specific Legal Theory
Respondent’s eighth affirmative defense claims petitioners’ “unclean hands.” (Ring affidavit, exhibit D, at 3.) Respondent’s allegations as to petitioners’ continued insistence that the damage was minimal and refusal to make effective repairs, preventing the premises’ use for an extended period, and violating petitioners’ lease obligations, while respondent complied with its own lease obligations, make out a claim of unconscionable conduct by petitioners. (390 W. End Assoc. v Baron, 274 AD2d 330, 332 [1st Dept 2000]; see B. Boman & Co. v Professional Data Mgt., 218 AD2d 637, 638 [1st Dept 1995].)
The defense of “unclean hands,” however, would bar petitioners’ claims only if petitioners have breached a fiduciary duty to respondent. (Ross v Moyer, 286 AD2d 610, 611 [1st Dept 2001]; Cohen v Katz, 242 AD2d 448 [1st Dept 1997]; Rooney v Slomowitz, 11 AD3d 864, 867-868 [3d Dept 2004].) Because the parties’ landlord-tenant relationship on which this proceeding is based is distinctly not a fiduciary relationship, but an arm’s length business transaction, that defense does not pertain here. (Id.)
E. Conclusion
Since application of the lease requirements and the facts as alleged by respondent support its fifth through seventh affirmative defenses, the court denies petitioners’ motion to dismiss these defenses. In the context of the parties’ undisputed nonfidueiary relationship, respondent’s eighth affirmative defense is inapplicable and therefore dismissed. (CPLR 3211 [b].)
III. First and Second Counterclaims
Respondent’s first counterclaim for breach of contract mirrors the fifth and seventh affirmative defenses. In addition to lease paragraph 9, respondent relies on paragraph 4, which requires that:
*879 “Tenant shall give Owner prompt notice of any defective condition in any plumbing, heating system or electrical lines located in the demised premises and following such notice, Owner shall remedy the condition with due diligence. . . . Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for a diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner . . . failing to make any repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant’s sole remedy at law in such instance will be by way of any action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty with regard to which Article 9 hereof shall apply.” (Ring affidavit, exhibit A.)
In addition to a rent abatement for diminution of rental value, this counterclaim alleges damages of $89,039.93. Respondent’s second counterclaim for constructive eviction alleges damages only for diminution of rental value, in the form of a rent abatement.
Although the first counterclaim does not specify precisely what the $89,039.93 is for, the second counterclaim is limited to a rent abatement and specifies no figure, and the $89,039.93 does not match petitioners’ rent claims in any discernible respect. As the first counterclaim refers to estimated repair and restoration costs, which the second counterclaim omits, the court infers that the $89,039.93 is not the abatement amount, but is attributable to repair and restoration costs.
Petitioners seek to dismiss respondent’s counterclaims based on a waiver of its right to counterclaim in lease paragraph 26: “[I]n the event Owner commences ... a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding including a counterclaim under Article 4 except for statutory mandatory counterclaims.” (Id.) Although RPAPL *880 743 as well as 22 NYCRR 208.42 (b) permit an answer to “contain any legal or equitable defense, or counterclaim,” the statute does not mandate respondent’s counterclaim for breach of contract or for constructive eviction. The determination of most counterclaims in a summary proceeding is relegated to a plenary action, preserving the summary proceeding as a vehicle for the efficient resolution of landlord-tenant disputes. (Titleserv, Inc. v Zenobio, 210 AD2d 310, 311 [2d Dept 1994]; Bomze v Jaybee Photo Suppliers, 117 Misc 2d 957, 958 [App Term, 1st Dept 1983].) Therefore lease conditions precluding tenants from interposing counterclaims in summary proceedings are enforceable. (E.g., LRHC Flatbush, N.Y. v Aftor T. Realty, 282 AD2d 577, 578 [2d Dept 2001]; Titleserv, Inc. v Zenobio, 210 AD2d at 311; Mid-Island, Shopping Plaza Co. v Cutler, 112 AD2d 405, 408 [2d Dept 1985]; Amdar Co. v Hahalis, 145 Misc 2d 987, 988 [App Term, 1st Dept 1990].)
The only exception is a counterclaim so “inextricably intertwined” with petitioner’s claim that joint resolution of the claims will “expedite disposition of the entire controversy, avoid multiplicity of other lawsuits between the parties to accomplish the same result, do speedy justice for all and eliminate greater delay and expense.” (Haskell v Surita, 109 Misc 2d 409, 414 [Civ Ct, NY County 1981].) The principal example of a counterclaim within this exception in a commercial nonpayment proceeding is respondent’s second counterclaim of actual or constructive eviction, to offset the obligation to pay rent, because the claim is inextricably entwined with the nonpayment of rent. (Johnson v Cabrera, 246 AD2d 578, 579 [2d Dept 1998].)
Respondent’s first counterclaim for damages caused by petitioners’ breach of the lease, insofar as this counterclaim seeks damages for respondent’s repair or restoration costs and not just a rent abatement for diminished rental value, does not fit within the exception. Findings in this proceeding that petitioners breached the lease by failing to make repairs may support respondent’s claim that the breach forced the tenant to incur repair or restoration costs, but once the findings are applied under collateral estoppel, the proof of necessary costs is unrelated to a rent abatement for being out of possession or unable to use the premises. (See, e.g., Ryan v New York Tel. Co., 62 NY2d 494, 502 [1984]; Kanat v Ochsner, 301 AD2d 456, 458 [1st Dept 2003]; Bell v Alden Owners, 299 AD2d 207, 208 [1st Dept 2002]; Sam v Metro-North Commuter R.R., 287 AD2d 378, 379 *881 [1st Dept 2001].) The calculation of necessary repair or restoration costs does not depend on the extent of respondent’s possession or use of the leased space, diminish its rental value, or reduce respondent’s obligation to pay rent for the premises. Litigation of repair or restoration costs may be accomplished separately from the rent dispute without duplication of effort, while litigating those damages in this proceeding would only bog down its disposition.
In sum, respondent’s second counterclaim is inextricable from petitioners’ rent claims, but respondent’s first counterclaim is extricable in part. Respondent’s second counterclaim states a claim that is permissible in this proceeding. (CPLR 3211 [a] [6], [7].) Respondent’s first counterclaim states a claim, but it is impermissible in part. (Id.) Therefore the court denies petitioners’ motion to dismiss respondent’s second counterclaim and denies petitioners’ motion to dismiss respondent’s first counterclaim insofar as it seeks damages for diminution of rental value or a rent abatement. (85 John St. Partnership v Kaye Ins. Assoc., 261 AD2d 104, 105 [1st Dept 1999]; Dinicu v Groff Studios Corp., 257 AD2d 218, 224 [1st Dept 1999]; Matter of Scolamiero v Cincotta, 128 AD2d 224, 226 [3d Dept 1987]; County Holding Corp. v Brati Inc., 2002 NY Slip Op 40204[U] [App Term, 2d Dept 2002].) The court grants petitioners’ motion to dismiss respondent’s first counterclaim insofar as it seeks damages for repair or restoration costs or other costs unrelated to a rent abatement or diminished rental value, without prejudice to a claim for those costs in another action.
IV Fourth Counterclaim
Respondent’s allegations as to petitioners’ conduct supporting respondent’s fourth counterclaim for breach of the covenant of good faith and fair dealing largely mirror the eighth affirmative defense. In addition to petitioners’ persistent refusal to make effective repairs to the premises based on a bad faith claim of minimal damage, respondent alleges petitioners’ refusal was based on a bad faith claim of late notice of the alleged casualty.
Unlike the defense of “unclean hands,” this counterclaim does not depend on the parties’ fiduciary relationship. The claim depends only on their undisputed contractual relationship.
All contracts imply a covenant of good faith and fair dealing in their performance. (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]; Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995].) The contracting parties pledge not to injure each other’s right to receive the benefits of *882 the bargain. (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d at 153; Dalton v Educational Testing Serv., 87 NY2d at 389; Chemical Bank v Stahl, 272 AD2d 1, 14 [1st Dept 2000]; Rooney v Slomowitz, 11 AD3d 864, 867 [3d Dept 2004].) This pledge does not imply obligations inconsistent with the contract’s express terms, but it does encompass any promises a reasonable person would understand to be included. (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d at 153; Dalton v Educational Testing Serv., 87 NY2d at 389.)
Thus, a claim that petitioners acted in bad faith and dealt unfairly with respondent might, as they urge, duplicate its breach of contract claim. A breach of the covenant of good faith and fair dealing may include conduct, however, that does not violate an express term of the parties’ lease, but constitutes arbitrary, irrational, or manipulative action in exercising discretion otherwise permitted under the contract. (Id.; Chemical Bank v Stahl, 272 AD2d at 14; LaBarte v Seneca Resources Corp., 285 AD2d 974, 975 [4th Dept 2001]; Times Sq. Stores Corp. v Bernice Realty Co., 141 AD2d 536 [2d Dept 1988].)
Having received immediate notice of a casualty and immediately viewed it, petitioners, according to respondent, insisted the damage was minimal and hence refused to make complete repairs. The lease imposes no strict speediness requirement or time limit on the owner’s repair and restoration of the premises, however, other than “due diligence” (Ring affidavit, exhibit A, 1Í 4), and “all reasonable expedition, subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner’s control.” (Id. 11 9 [d].) Although petitioners are entitled to act in their own interests rather than as fiduciaries to respondent, assuming the need for far more extensive repairs that respondent alleges, implicit in the lease, viewed as a whole, is a reasonable expectation that petitioners will not purposefully prevent the premises’ use more extensively or longer than necessary. (Dalton v Educational Testing Serv., 87 NY2d at 390; Rowe v Great Atl. & Pac. Tea Co., 46 NY2d at 69; Chemical Bank v Stahl, 272 AD2d at 14; Tapps of Nassau Supermarkets v Linden Blvd., 269 AD2d 306, 307-308 [1st Dept 2000].) A reasonable tenant would not have entered a lease that permits the owner to prevent the tenant’s use of the premises indefinitely, arbitrarily, or unreasonably and to deprive the tenant of the very benefits of the lease. (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d at 153; Dalton v Educational Testing Serv., 87 NY2d at 389; Rowe v Great Atl. & Pac. Tea Co., 46 *883 NY2d at 69; LaBarte v Seneca Resources Corp., 285 AD2d at 974-975.)
Furthermore, even if petitioners technically might claim respondent’s noncompliance with lease paragraph 28’s mailing requirement, given their undisputed receipt of immediate firsthand as well as written notice, reliance on respondent’s regular rather than registered or certified mailing, to obliterate a substantial rent abatement claim, may have been unjustified. (Chemical Bank v Stahl, 272 AD2d at 14-15; Tapps of Nassau Supermarkets v Linden Blvd., 269 AD2d at 307-308.) Petitioners may not rely on a technical lease provision to insulate them from potential liability for preventing the continued tenancy. (Id.; Times Sq. Stores Corp. v Bernice Realty Co., 141 AD2d 536 [2d Dept 1988].) If petitioners disputed their obligation to repair because of either the regular mailing or their dispute as to the premises’ condition, petitioners could have reserved their rights, assessed the need more thoroughly, made the repairs respondent sought in any event, collected rent, and sought recovery from respondent in the event the work was the tenant’s responsibility. Assuming in the context of petitioners’ motion to dismiss that the work was the owner’s responsibility, petitioners may have unjustifiably thwarted respondent’s use and occupancy, the payment of rent, and the lease’s salient purposes. (Chemical Bank v Stahl, 272 AD2d at 14-15; LaBarte v Seneca Resources Corp., 285 AD2d at 974-975.)
Thus the court might find no breach of the narrow contractual “due diligence” or “reasonable expedition” requirement (Ring affidavit, exhibit A, 11114, 9 [d]), but find a breach of the broader covenant of good faith and fair dealing. On the other hand, the court might find a breach of a narrow contractual requirement, but nothing broader. (Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d 34, 45-46 [1972].) In further contrast, while the court might find a breach of a narrow contractual requirement causing specific damages, the court also might find actions “so manifestly harmful” to respondent as to breach the covenant of good faith and fair dealing and cause broader damages. (Id. at 46.)
Respondent’s fourth counterclaim alleges damages for diminution of rental value, in the form of a rent abatement, and for the same $89,039.93 in costs alleged in respondent’s first counterclaim and attributed to repair or restoration costs. Although the fourth counterclaim is equally imprecise as to what this amount is for, since this counterclaim similarly refers to *884 estimated repair and restoration costs, the court infers that the $89,039.93 is again attributable to those costs. Therefore, insofar as respondent’s fourth counterclaim also seeks damages for repair or restoration costs or other costs unrelated to a rent abatement or diminished rental value, the court grants petitioners’ motion to dismiss the fourth counterclaim, again without prejudice to a claim for those costs in another action. (CPLR 3211 [a] [6].)
Although the damages may be limited in this proceeding, the facts as alleged by respondent make out a claim of petitioners’ breach of the covenant of good faith and fair dealing. Therefore, other than the limitation on damages imposed above, the court denies petitioners’ motion to dismiss the fourth counterclaim. (CPLR 3211 [a] [7].)
V Disposition
The court grants petitioners’ motion to dismiss respondent’s affirmative defenses only as to its eighth defense and respondent’s counterclaims only as to its first and fourth counterclaims, insofar as they seek damages for respondent’s repair or restoration costs or other costs unrelated to a rent abatement or diminished rental value. (CPLR 3211 [a] [6], [7]; [b].) This partial dismissal is without prejudice to a claim for those costs in another action. (CPLR 3211 [a] [6].) The court otherwise denies petitioners’ motion. (CPLR 3211 [a] [7]; [b].)