*761 OPINION OF THE COURT
Matthew F. Cooper, J.
Petitioner, the owner of a building in Manhattan’s Meatpacking District, commenced this commercial landlord-tenant nonpayment proceeding seeking rent for September and October 2007. The monthly rent is $6,018.12. The parties have a 10-year lease that commenced April 1, 1995 and which was extended an additional three years in 2005. It appears that the extended term of the lease expires on March 31, 2008.
Respondent operates Café Florent, a well-known restaurant much beloved for its idiosyncratic take on classic bistro cuisine, its late hours and its colorful ambience. When Café Florent first opened more than 20 years ago, nightlife in the Meatpacking District consisted of some rough and tumble bars, the occasional basement rock n’ roll venue and rampant street prostitution. In the intervening years, the meat wholesalers gave way to chic boutiques and designer hotels, and the prostitutes and their drive-through patrons were replaced by celebrities and scenesters lining up to get into the hottest clubs and trendiest restaurants. As is often the case when an area like the Meatpacking District undergoes a radical transformation, a pioneering establishment like Café Florent, which played a key role in that transformation, ends up as a vestige from an earlier time. The sad result is that the perfect neighborhood bistro can no longer afford to be in the neighborhood it helped create.
Both sides seem to recognize that this nonpayment proceeding is merely a skirmish before the final showdown. By all indications, the real battle will be the holdover proceeding that will presumably come after the lease expires a few weeks from now. In her reply affirmation, petitioner’s attorney quotes respondent’s principal, Florent Morellet, as having told a local paper, “I can’t tell you [when we’ll close]. Nobody will know until the fat lady sings. I’ll fight with the last bone in my body.” Café Florent’s patrons can only hope that before “the fat lady sings” an accommodation can be reached that results in a new lease that is fair to both parties.
In the meantime, this nonpayment case continues. Now before me are pretrial motions that deal with an issue that often arises in commercial summary proceedings: the tenant’s right to assert monetary counterclaims. Petitioner has moved to strike the sole counterclaim contained in respondent’s answer and respondent has cross-moved to amend its answer to include two ad *762 ditional counterclaims. Both the existing and proposed counterclaims are also styled as affirmative defenses in that they seek to offset petitioner’s claim for rent as well as to collect damages. Although each is labeled “Affirmative Defense/Counterclaim, ’ ’ they are all fundamentally counterclaims. For matters of simplicity, respondent’s affirmative defenses/counterclaims will be referred to as counterclaims throughout this decision, but the court’s decision on each counterclaim will also be applicable to the correlating affirmative defense.
The original counterclaim alleges that petitioner breached the lease by failing to file tax certiorari proceedings and that as a result respondent overpaid its share of the annual tax increases for the last six years by at least $150,000. The first proposed counterclaim alleges that respondent overpaid $27,167.18 in additional rent because petitioner billed respondent for 100% of the annual tax increases when the lease requires respondent to pay only 662/s%. The second proposed counterclaim alleges that respondent lost an estimated $30,000 in revenue because petitioner failed to sign off on an affidavit to allow sidewalk seating. Both sides also assert that each is entitled to summary judgment.
Petitioner contends that the lease bars respondent from raising any of the counterclaims in this summary proceeding. She points to the provisions in the lease wherein the tenant waives its right to assert a counterclaim and agrees to pay rent as it becomes due each month “without any setoff or deduction whatsoever.” Respondent submits that, notwithstanding the provisions in the lease barring counterclaims, its counterclaims are permissible because they are “inextricably intertwined” with the landlord’s claim for rent.
As both sides acknowledge, lease terms precluding tenants from pursuing counterclaims in commercial landlord-tenant summary proceedings are generally enforceable. (See Amdar Co. v Hahalis, 145 Misc 2d 987, 988 [App Term, 1st Dept 1990].) The exception is where a counterclaim is “so ‘inextricably intertwined’ with petitioner’s claim that joint resolution of the claims will ‘expedite disposition of the entire controversy, avoid multiplicity of other lawsuits between the parties to accomplish the same result, do speedy justice for all and eliminate greater delay and expense.’ ” (Ring v Arts Inti., Inc., 7 Misc 3d 869, 880 [Civ Ct, NY County 2004], quoting Haskell v Surita, 109 Misc 2d 409, 414 [Civ Ct, NY County 1981].) “Where the issues raised in the counterclaim bear directly upon the landlord’s right to *763 possession, they are said to be intertwined in the summary proceeding issues and should be disposed of in one proceeding.” (Sutton Fifty-Six Co. v Garrison, 93 AD2d 720, 722 [1st Dept 1983], citing Great Park Corp. v Goldberger, 41 Misc 2d 988 [Civ Ct, NY County 1964].)
Both respondent’s original counterclaim and the first proposed counterclaim in its amended answer concern alleged overcharges of taxes paid as additional rent. Overcharge claims have been found to be inextricably intertwined with claims for possession and rent, and thus permitted to be interposed as counterclaims despite contrary lease provisions. (See e.g. Yanni v Brandwen Prods., 160 Misc 2d 109, 112 [Civ Ct, NY County 1994] [court stated that “relegat(ing) tenant to a plenary action on the overcharge, as petitioner urges, would be contrary to law and manifestly unjust”].) Similarly, claims relating to the method in which certain charges are calculated have been held to be permissible counterclaims, despite lease provisions barring the interposition of counterclaims in a summary proceeding. (See e.g. All 4 Sports & Fitness, Inc. v Hamilton, Kane, Martin Enters., Inc., 22 AD3d 512, 513 [2d Dept 2005] [Court held that counterclaims were permissible where “(t)he plaintiffs contentions and those of the defendant relating to the method of calculating ‘CAM (common area maintenance) charges’ are inextricably intertwined”].)
Here, respondent’s counterclaim for an alleged overpayment arising from the landlord’s failure to initiate tax certiorari proceedings is intertwined with petitioner’s claim for rent to the extent that the overpayment may offset the claim. Nevertheless, to allow respondent to pursue such a large counterclaim, which respondent estimates to be in excess of $150,000 and goes back at least six years — where petitioner’s claim is for a relatively small amount of rent going back no further than September 2007 — would only serve to turn this proceeding from summary to protracted and “bog down its disposition.” (Ring v Arts Intl., Inc., 7 Misc 3d 869, 881 [2004].) Moreover, the counterclaim is speculative at best. The lease provision that respondent contends obligates the landlord to institute tax reduction proceedings is clearly missing a clause or perhaps even a whole sentence.* The result is that it is unclear whether the landlord is required to actually pursue such a proceeding or *764 merely use “its best efforts” to determine the likelihood of success in doing so. And even if the clause could be interpreted as requiring action on petitioner’s part, it is manifestly uncertain what, if any, decrease would have resulted had petitioner challenged the annual tax assessments. Thus, the court would be called on to conduct what would in effect be its own tax certiorari proceeding for every year in question, undoubtedly a burdensome and time-consuming endeavor. Under these circumstances, it is necessary to sever the counterclaim so as to preserve the integrity of this matter as a summary proceeding.
None of the concerns that compel disallowing respondent’s pursuit of its tax certiorari counterclaim are present with regard to the first proposed counterclaim. This counterclaim, which seeks to recover $27,167.18 that respondent contends it overpaid in taxes, is based on petitioner’s misapplication of the lease formula for determining the tenant’s share of tax increases. Petitioner concedes that she mistakenly billed respondent for all of the increase when she was only entitled to collect two thirds. Thus, this presents a rather simple accounting issue that can be resolved relatively easily and expeditiously within the context of a summary proceeding. Accordingly, respondent will be permitted to amend its answer to include this counterclaim. Because there are triable issues of fact as to whether petitioner has properly credited respondent for what she admits was a persistent overcharge, neither side is entitled to summary judgment.
Respondent will not be permitted to assert its second proposed counterclaim — that it lost $30,000 in revenue as a result of petitioner’s failure to sign off on a sidewalk café permit. Not only is the claim speculative, but it has been specifically held that a claim for lost business is not inextricably intertwined with a commercial proceeding for the nonpayment of rent. (Amelar Co. v Hahalis, 145 Misc 2d 987, 988 [1990]; V & J Inc. v 2320 Rte. 112, LLC, 13 Misc 3d 30, 31 [App Term, 2d Dept 2006].)
In light of the foregoing, petitioner’s motion to dismiss respondent’s original counterclaim, which concerns tax certiorari proceedings, is granted to the extent of severing such counterclaim with leave to respondent to assert the claim in a plenary action. Respondent’s cross motion to amend its answer to include two additional counterclaims is granted solely to the *765 extent of deeming the answer amended to include the first proposed counterclaim, which concerns the overpayment occasioned by the admitted misapplication of the tax-increase formula. The cross motion is denied with respect to amending the answer to include the second proposed counterclaim, which is loss of revenue from sidewalk seating. Summary judgment is denied to both sides except to the extent of restricting the issues at trial to those involving the tax formula overcharge, respondent having asserted no other viable defense to petitioner’s claim for rent nor having contested petitioner’s ability to establish her prima facie case.

 Article 87 of the lease reads in its entirety as follows: “Modifying Article 53 hereof, landlord warrants and represents it will use its best efforts, [sic] each year during the term of this Lease or any extension thereof Landlord *764 shall institute such tax reduction or other proceedings to reduce the assessed valuation as are customary for commercial buildings in Manhattan.”