■ NIAGARA FRONTIER TRANSPORTATION AUTHORITY, Respondent, v EURO-UNITED CORPORATION et al., Appellants, et al., Defendants. [757 NYS2d 174] —Appeal from an order of Supreme Court, Erie County (Makowski, J.), entered January 8, 2002, which denied the motion of defendants-appellants for summary judgment dismissing certain claims against them.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law by granting partial summary judgment to plaintiff on the claim against defendant KPMG Inc. and KPMG Inc., in its capacity as interim receiver for Euro-United Corporation, for a holdover tenancy and as modified the order is affirmed without costs, and the matter is remitted to Supreme Court, Erie County, for further proceedings in accordance with the following memorandum: Plaintiff and defendant Euro-United Corporation (Euro-United of Canada) executed a lease for certain premises in Buffalo. Euro-United of Canada's Canadian affiliates, also named as defendants herein, and Euro-United of Canada (collectively, Euro-United), filed for bankruptcy protection in Canada and the United States, and defendant KPMG Inc. (KPMG) was appointed to act as interim receiver for Euro-United. KPMG proposed the sale of certain property of Euro-United located at the premises in Buffalo, but plaintiff asserted ownership of some of the property. Plaintiff and KPMG executed an "Occupancy Agreement," which incorporated by reference the lease between plaintiff and Euro-United of Canada. Pursuant to its express terms, the occupancy agreement was intended "to avoid prolonged and expensive litigation over the ownership rights of the Parties in the property," and the subject of the occupancy agreement was "certain property located within the Premises [to] be sold pursuant to an agreement with an auctioneer." That property was listed in "Exhibit 'A'," which

was attached to the occupancy agreement, and the occupancy agreement further provided that KPMG would be responsible for the removal of all items listed in exhibit A. The lease, however, expressly required Euro-United of Canada to remove all equipment from the property upon termination of the lease.

KPMG vacated the premises after the lease was terminated but left behind three massive pieces of equipment referred to by the parties as the Engel machines. Plaintiff sought removal of those machines and all three thereafter were removed by the time plaintiff commenced this action. The sole issue on appeal concerns the claim against KPMG for a holdover tenancy.

Euro-United and KPMG moved for summary judgment dismissing "the holdover tenancy claims" only. The complaint asserted a holdover tenancy claim against KPMG only, and thus Supreme Court properly denied that part of the motion seeking summary judgment with respect to Euro-United. We further conclude that the court properly denied that part of the motion seeking summary judgment dismissing the holdover tenancy claim against KPMG. In addition, however, we exercise our authority pursuant to CPLR 3212 (b) to search the record and grant summary judgment in favor of plaintiff on that claim.

KPMG contends that the specific provision of the occupancy agreement requiring it to remove those items listed in exhibit A is controlling over the provision in the lease requiring Euro-United of Canada to remove all equipment from the property, under a conflict of laws provision in the occupancy agreement as well as under the maxim of inclusio unius est exclusio alterius, i.e., "the inclusion of one is the exclusion of another" (*Uribe v Merchants Bank of N.Y.*, 91 NY2d 336, 340 [1998]). Thus, KPMG contends that it was not required to remove the three machines at issue, because they were not listed in exhibit A, and it therefore was not a holdover tenant as a matter of law. We disagree.

"When interpreting a written contract, the court should give effect to the intent of the parties as revealed by the language and structure of the contract, and should ascertain such intent by examining the document as a whole. Effect and meaning must be given to every term of the contract, and reasonable effort must be made to harmonize all of its terms. Moreover, the contract must be interpreted so as to give effect to, not nullify, its general or primary purpose" (*Village of Hamburg v American Ref-Fuel Co. of Niagara*, 284 AD2d 85, 89 [2001], *lv denied* 97 NY2d 603 [2001] [internal quotation marks and citations omitted]; *see generally Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 171-172 [1973]).

As previously noted, the primary purpose of the occupancy agreement as set forth therein was to avoid litigation over the ownership rights in the property "located within the Premises [to] be sold pursuant to an agreement with an auctioneer." The agreement with the auctioneer was titled "Auction Agreement" and was referred to as exhibit A. The first two headings in the occupancy agreement were titled "1. Division of property and property authorized for sale pursuant to the Auction Agreement" and "2. The Auction." Subheading 2 (F) required KPMG to remove or cause the removal of all the property listed in exhibit A, i.e., the property to be sold at auction. The occupancy agreement did not specify that KPMG was obligated to remove only the property listed in exhibit A.

The lease, which as previously noted was incorporated by reference in the occupancy agreement, required Euro-United of Canada, and thus KPMG based on its status as interim receiver, to remove all equipment from the property upon termination of the lease. The two provisions concerning the removal of property are not inconsistent and thus, contrary to the contention of Euro-United and KPMG, the occupancy agreement is not ambiguous based on those two provisions. Additionally, the terms of the occupancy agreement and the lease incorporated by reference therein may be harmonized so that effect and meaning are given to every term. Under the occupancy agreement, KPMG was responsible for removing all of the property to be sold at auction, even if the property was sold to a third party. Under the lease, Euro-United of Canada, and thus KPMG based on its status as interim receiver, was responsible for removing equipment regardless of whether it was to be sold at auction. The Engel machines were not listed as items to be sold at auction, but were equipment brought onto the premises by Euro-United. Thus, under the terms of the lease, KPMG was responsible for removing the Engel machines.

Having concluded that KPMG was responsible for removing the Engel machines, we further conclude that the failure to remove those machines constitutes a holdover tenancy as a matter of law. Whether the failure to remove property at the termination of a lease creates a holdover tenancy "is usually a question of fact, to be determined by taking into consideration the nature of the property leased[,] the amount paid as rent, the value of the real property, the value of the personal property left on the leased premises, the intent with which it was left, and all other facts and circumstances surrounding the transaction" (*Canfield v Harris & Co.*, 222 App Div 326, 329

[1927], *affd* 248 NY 541 [1928]; *see Lordae Realty Corp. v Montefiore Med. Ctr.*, 232 AD2d 338 [1996]). Where the property left behind is relatively small or worthless, there is no holdover tenancy as a matter of law (*see Frankman v Evans*, 34 NYS2d 95, 97 [1942]). Where, however, the property consists of the entire stock and fixtures of a corporation, there will be a holdover tenancy as a matter of law (*see id.* at 98). There is no holdover tenancy if the property has been abandoned (*see id.* at 99).

The Engel machines in this case were massive. They weighed 2,000 tons, 1,500 tons and 1,000 tons, respectively. The machines blocked access to the premises and prevented plaintiff from leasing the property to a new tenant. The removal of the machines cost over $140,000 and required the hiring of a structural engineer and expert haulers and riggers. Overhead cranes were also required. The machines were valuable, one selling for 850,000 Canadian dollars, and the conclusion that they had not been abandoned is evidenced by the negotiations between plaintiff, Euro-United and a third party for the removal of the machines and their transfer to the third party. We conclude that the failure of KPMG to remove the three machines created a holdover tenancy as a matter of law.

Thus, although we conclude that the court properly denied the motion of Euro-United and KPMG, we modify the order by granting partial summary judgment to plaintiff pursuant to CPLR 3212 (b) on the claim against KPMG for a holdover tenancy. We remit the matter to Supreme Court, Erie County, for a determination of the amount of damages on that claim. Present—Pigott, Jr., P.J., Pine, Wisner, Kehoe and Gorski, JJ. [Amended 306 AD2d __ (2003).]