Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered March 15, 2013, which granted plaintiffs’ motion for partial summary judgment dismissing defendant’s counterclaim for delay damages and for an order dissolving the injunction bond posted by plaintiffs, modified, on the law, to deny that part of the motion seeking to dissolve the bond, and to reinstate the bond, and otherwise affirmed, without costs.
Defendant landlord leased a 24-story office building to plaintiff tenants pursuant to several net leases that expired on December 31, 2011 (collectively, the lease). The lease contained several provisions governing repairs to the building. Section 33.01 required the tenants, at the end of the lease term, to surrender the premises in good condition (the surrender clause). Pursuant to sections 12.01 (a) and 15.02, the tenants were required, during the lease term, to take good care of and make repairs to the premises and equipment therein (the upkeep clause). The lease further provided that if the tenants defaulted in their ongoing repair obligations, the landlord itself could perform the necessary repairs (§ 21.01 [a]), and that the tenants were required to permit the landlord to enter the premises to do so (§ 20.01).
On December 23, 2010, the landlord sent the tenants a notice declaring that they were in default of the upkeep clause for failing to make repairs to certain building systems. The notice advised the tenants that if they did not commence the repair work within the 25-day cure period set forth in the lease, the landlord would exercise its right to enter and perform the repairs itself.
*470 On January 13, 2011, the tenants filed a complaint in this action seeking, inter alia, a declaration that they are not in default of the lease and are not responsible for performing the repairs identified in the landlord’s default notice. The tenants also moved for a preliminary injunction preventing the landlord from entering the premises to cure the alleged default. The landlord opposed the application and, in the event the injunction were granted, requested a bond to cover the delay damages it would incur if it had to postpone the repairs until after the lease term ended. In other words, the landlord asked for a bond amount sufficient to cover the rent it would lose during the time it performed the repairs after the tenants vacated. On March 7, 2011, the motion court granted the preliminary injunction upon the condition that the tenants post a bond in the amount of $4,708,242.[1] The tenants subsequently posted the bond.
On June 6, 2011, the landlord answered the tenants’ complaint and asserted a counterclaim alleging breach of the upkeep clause. The counterclaim sought damages to cover the cost of the repairs, along with delay damages allegedly incurred as a result of the tenants’ obtaining the injunction to prevent the landlord from entering the premises. On or before December 31, 2011, the end of the lease term, the tenants vacated the building and surrendered possession to the landlord. In October 2012, the tenants moved for partial summary judgment dismissing the landlord’s counterclaim to the extent it sought delay damages and for an order dissolving the bond. By order entered March 15, 2013, the court granted the tenants’ motion.
The motion court properly dismissed the landlord’s counterclaim for delay damages. It is well settled that lost rent is not recoverable as damages for breach of a lease covenant requiring a tenant to keep the premises in good repair. An action alleging breach of such a covenant can be brought either before or after the expiration of the lease term (City of New York v Pennsylvania R.R. Co., 37 NY2d 298, 301 [1975]). In Appleton v Marx (191 NY 81 [1908]), the Court of Appeals identified two different measures of damages, depending on when the action is commenced. If the action is brought before the lease expires, a landlord can recover “the injury done to the reversion” (id. at 83), i.e. “the difference between the value of the premises with the improvement and absent the improvement” (Tobin v Union News Co., 18 AD2d 243, 245 [4th Dept 1963], affd 13 NY2d *471 1155 [1964]). On the other hand, if the action is brought after the expiration of the lease term, “the measure of the damages is the cost of putting the premises into repair” (Appleton, 191 NY at 83; accord Pennsylvania R.R. Co., 37 NY2d at 301; Farrell Lines v City of New York, 30 NY2d 76, 84 [1972]). In neither circumstance, however, did the Court of Appeals provide that lost rent is included in the measure of damages.
Courts in this state have consistently followed this rule. For example, in Solow Mgt. Corp. v Hochman (191 AD2d 250, 251 [1st Dept 1993], lv dismissed 82 NY2d 802 [1993]), we rejected the landlord’s claim for lost rent arising out of the tenant’s failure to restore the premises to their original condition, concluding that the measure of damages was limited to the reasonable costs of restoring the premises. Likewise, in Charlebois v Carisbrook Indus., Inc. (23 AD3d 821 [3d Dept 2005]), where a lease provision required the tenants to maintain the premises and perform preventive maintenance of building systems, the court dismissed the landlords’ claim for rent lost while the repairs were being made (see also Arnot Realty Corp. v New York Tel. Co., 245 AD2d 780, 782 [3d Dept 1997]; Mudge v West End Brewing Co., 145 App Div 28, 31 [3d Dept 1911], affd 207 NY 696 [1913]; Orkin’s Fashion Stores, Inc. v S.H. Kress & Co., 68 NYS2d 764 [Sup Ct, NY County 1947], citing Mudge). We see no reason to depart from this well established principle.
The dissent attempts to distinguish this body of case law by suggesting that New York’s rule precluding damages for lost rent does not apply here because the landlord alleges breach of the upkeep clause, not the surrender clause. The case law, however does not recognize such a distinction, and, in fact, courts have applied the rule to both types of repair covenants (see Charlebois, 23 AD3d at 821; Arnot Realty Corp., 245 AD2d at 780; Orkin’s Fashion Stores, 68 NYS2d at 765). Contrary to the dissent’s view, the landlord is not deprived of a remedy for breach of the upkeep clause, and may seek the appropriate measure of damages provided for by Court of Appeals precedent. The dissent cites no cases that allow for the recovery of lost rent for breach of a repair covenant. Instead, relying on general contract principles, the dissent proposes that we permit such damages because they were foreseeable. However, none of the cases setting forth the proper measure of damages for breach of a repair covenant employed the foreseeability analysis urged by the dissent.
The dissent points out that the lease here contains no express limitation on the landlord’s right to recover damages. Although that is true, the lease also does not specifically provide for *472 recovery of consequential damages in the form of lost rent. This Court’s recent decision in New York Univ. v Cliff Tower, LLC (107 AD3d 649 [1st Dept 2013]) is instructive. In that case, we dismissed a landlord’s claim for lost rent based on a breach of a repair covenant, concluding that “[n]othing in the relevant lease provisions provided for additional rent beyond the term of the lease as part of the damages for restoring the premises to the agreed upon condition” (107 AD3d at 649). The same result should occur here. Having failed to include a provision in the lease allowing for recovery of lost rent, the landlord is barred from obtaining such damages (see Chemical Bank v Stahl, 255 AD2d 126 [1st Dept 1998] [denying landlord’s lost rent claim where the parties’ agreement did not provide for the award of such consequential damages]).
There is no merit to the landlord’s argument that it is entitled to recover lost rent under a holdover theory. It is undisputed that the tenants had vacated the premises by the time the lease term ended, and courts have repeatedly rejected attempts to analogize similar facts to holdover tenancies (see Chemical Bank, 255 AD2d at 127 [rejecting landlord’s attempt to recover lost rental income on the theory that tenant held over its tenancy]; Arnot Realty Corp., 245 AD2d at 782 [“a tenant who has vacated premises but breached covenants to repair cannot be held liable for holdover rent while the repairs are made and the premises unleased”]). The landlord’s reliance on Niagara Frontier Transp. Auth. v Euro-United Corp. (303 AD2d 920 [4th Dept 2003]) is misplaced. In that case, a holdover tenancy was found because the tenant, upon vacating the premises, left behind “massive pieces of equipment” that prevented the landlord from leasing the premises to a new tenant (303 AD2d at 921, 923). Here, in contrast, the landlord does not allege that the tenants left behind any property that prevented it from reletting the premises.
Contrary to the dissent’s view, the landlord cannot recover, as part of its counterclaim, damages it allegedly sustained as a result of the court’s issuance of the preliminary injunction. “Absent proof of malice, not asserted here, there is no common-law or statutory right to recover damages sustained as a result of an improperly issued preliminary injunction” (Thompson v Topsoe, 237 AD2d 113, 113-114 [1st Dept 1997]). Instead, the undertaking posted in connection with issuance of the injunction provides the sole basis for relief (see Honeywell, Inc. v Technical Bldg. Servs., 103 AD2d 433, 434 [3d Dept 1984]).
We conclude that the motion court prematurely discharged the bond because there has been no determination as to whether *473 the tenants were entitled to the preliminary injunction (see J. A. Preston Corp. v Fabrication Enters., 68 NY2d 397 [1986]; 2339 Empire Mgt., LLC v 2329 Nostrand Realty, LLC, 71 AD3d 998 [2d Dept 2010]). If the injunction was warranted, then the landlord will not be entitled to any damages arising from its issuance. However, if it is finally determined that the tenants were not entitled to an injunction, the landlord will be entitled to recover, against the undertaking, “all damages and costs which may be sustained by reason of the injunction” (CPLR 6312 [b]).
Although lost rent is not an available measure of damages on the landlord’s counterclaim, we cannot conclude, on this record, as a matter of law, that lost rent is not recoverable as damages against the undertaking. We note that the parties, on appeal, did not cite to CPLR 6312 (b), and the motion court did not address that provision when it dissolved the bond.[2] The tenants’ contention that the bond was properly vacated because the landlord did not lose any rental income as a result of the injunction presents issues of fact inappropriate for summary disposition. In reinstating the bond, we understand, as the tenants argue, that the landlord ultimately may not be able to prove actual damages, but it is not possible for us, at this juncture, to definitively resolve this factual issue.
Concur — Richter, Manzanet-Daniels and Feinman, JJ.

. Although the motion court referred to the injunction as a Yellowstone injunction, the landlord’s default notice did not seek to terminate the tenancy (see First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630 [1968]).

. The parties did reference this statute in earlier briefing before the motion court as to the proper amount of the bond.